(No. 82817.—

THEODORE ZEKMAN, Appellee, v. DIRECT AMER-ICAN MARKETERS, INC. (American Telephone and Telegraph Company *et al.*, Appellants).

*Opinion filed May 21, 1998.*

David F. Graham, Susan A. Weber and Eric S. Mattson, of Sidley & Austin, of Chicago, for appellants.

Michael J. Freed, Michael B. Hyman and William H. London, of Much, Shelist, Freed, Denenberg, Ament, Bell & Rubenstein, P.C., Steven M. Levin, of Levin & Perconti, and Robert S. Levin, Joseph A. Ginsburg and Donald B. Levine, of Levin & Ginsburg, Ltd., all of Chicago, for appellee.

Deborah M. Zuckerman, of Washington, D.C., for *amicus curiae* American Association of Retired Persons.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, Theodore Zekman, brought this action in the circuit court of Cook County against American Telephone and Telegraph Company, American Telephone and Telegraph Company of Illinois, AT&T Communications, Inc., and AT&T Communications of Illinois, Inc. (collectively, AT&T), seeking damages under statutory and common law theories of recovery. The

circuit court dismissed some of these claims and granted AT&T summary judgment on others. The appellate court reversed. 286 Ill. App. 3d 462, 471. We allowed AT&T's petition for leave to appeal (166 Ill. 2d R. 315) and now reverse the judgment of the appellate court and affirm the judgments of the circuit court.

BACKGROUND

The procedural history of this case may be stated briefly. Patricia Rick filed a class action in the circuit court of Cook County on May 20, 1992, against Direct American Marketers, Inc. (Direct American), AT&T, and Illinois Bell Telephone Company. Plaintiff was substituted as the named plaintiff and class representative and filed an amended class action complaint (first amended complaint). Count V of the first amended complaint alleged that AT&T violated sections 2 and 2P of the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/2, 2P (West 1992)) by knowingly receiving the benefits of Direct American's fraud. Plaintiff also alleged, in count VI, that AT&T acquired moneys by means of a deceptive practice in violation of section 9 of the Act (815 ILCS 505/9 (West 1992)). The trial judge granted AT&T's motion to dismiss these claims. Plaintiff later filed second and third amended class action complaints, which he withdrew in response to AT&T's dismissal motions. Plaintiff then filed a fourth amended class action complaint (fourth amended complaint), which alleged violations of section 2 of the Act by AT&T. These allegations differed from those allegations in the first amended complaint in that plaintiff now alleged direct conduct by AT&T in violation of the Act. Plaintiff also alleged that AT&T committed common law fraud and knowingly accepted the benefits of fraud in violation of the common law. The trial judge granted AT&T's and Direct American's motions for summary judgment.

Plaintiff appealed both the decision to dismiss plaintiff's claims against AT&T in counts V and VI of the first amended complaint and the grant of summary judgment on the fourth amended complaint. The appellate court reversed and remanded the cause to the circuit court. 286 Ill. App. 3d at 471. First, the appellate court found that summary judgment was improper on the fourth amended complaint because there was a genuine issue of fact as to whether Direct American's mailings caused plaintiff to believe that he had won an award. 286 Ill. App. 3d at 469. Next, the appellate court reversed the trial court's ruling dismissing counts V and VI of the first amended complaint. 286 Ill. App. 3d at 471.

Both AT&T and Direct American filed petitions for leave to appeal in this court. We denied Direct American's petition (173 Ill. 2d 549) but allowed AT&T's petition (166 Ill. 2d R. 315). We granted leave to the American Association of Retired Persons to file a brief as an *amicus curiae*. 155 Ill. 2d R. 345. As the question of class action status has not yet been reached, it is not at issue here.

## FACTS

On review of an order granting a motion to dismiss, all well-pleaded facts in the complaint are accepted as true. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991). The following general facts are relevant to our inquiry, and additional facts are supplied as needed. Plaintiff received a series of separate mailings from Direct American. The mailings generally did not solicit plaintiff to purchase any product or service. Instead, the mailings indicated that plaintiff had won a prize. Prizes listed on each mailing included large cash awards, as well as discount coupons for various products or services. While it was possible to respond by use of the mail, the mailings urged recipients to call a "900" number in order to

immediately claim their prize. By calling the "900" number, recipients incurred charges, usually between $8 and $10 for the call. In addition to stating the charge that applied to the call, the mailings informed the recipient of the procedure for responding by mail and gave the odds of winning the prizes. This information usually was in less conspicuous type. The mailings often listed plaintiff's name next to the largest cash award. Plaintiff made numerous calls to various different "900" numbers. Each time plaintiff called, he won only discount coupons, and never a cash award. AT&T billed plaintiff for the charges and retained a percentage of the charge for itself; the majority of the charge went to Direct American.

AT&T can provide billing services for companies soliciting "900" number calls so that the charge appears on the caller's long-distance bill. AT&T has guidelines that impose minimum standards on those companies that use its services. AT&T reviewed Direct American's mailings for the purpose of ensuring that they complied with the AT&T guidelines and state and federal laws prohibiting false, deceptive, and misleading advertising and trade practices. At times, AT&T determined that Direct American's proposed mailings were misleading and required Direct American to make changes before they were sent. Sometimes AT&T did not determine a mailing to be misleading until after it was already sent to customers and the customers had made and been billed for calls to the "900" number. It was AT&T's policy to provide refunds for customers who contested charges for their calls to Direct American.

Plaintiff was deposed. His deposition testimony provides in pertinent part:

"Q. Well, was there a time when you were getting cards but you were not responding, you were simply throwing them away?

A. No. I responded to—my name was on them. And I thought that my name being on them meant something.

*  *  *

Q. All right. When you received the mail piece, did you read it?

A. In a cursory fashion.

Q. Approximately how much time did you spend reading it?

A. Enough time to see if my name was on it and if there was a cash award on it. But I did not read the card carefully in any other way.

Q. And you made a telephone call?

A. Yes.

Q. Were you aware that you could have also found out whether or not you won by mailing in and asking?

A. Yes. I had determined that from previous mailings when I began getting them. However, I chose not to mail them in because it was emphasized that it would take three or four weeks before it would even be acted upon. And in that period of time, you wouldn't know.

Q. All right. Did you have any—strike that.

You also, knew, did you not, that there would be a charge from the telephone company associated with the call to the 900 number?

A. Yes.

Q. And when you called, did you hear a message that told you that you could hang up and not get charged for the telephone call?

A. Yes, I did.

*  *  *

Q. Were you being compelled to respond?

A. I wasn't compelled.

Q. It was your own decision?

A. Yes.

Q. And you were being given information in the mailing pieces, correct?

A. I was responding to the fact that I have [sic] been given a mailing that had my name on it with a certain amount of money that I had won as an award.

Q. You said money—

A. Or a claim.

\* \* \*

Q. Dr. Zekman, does that [referring to an exhibit of a mailing] disclose to you that there are six different types of awards? Do you see in the box where it says awards are?

A. Yes. But I did not carefully read what all the awards were. I was only interested in whether I won an award.

Q. Right. And is it your testimony that you believed after you read this that you had won a cash award?

A. I did not know whether I had won an award, a cash award. I was responding to instructions in the hope that I did win a cash award.

Q. And you called rather than wrote because you were eager to find out?

A. Yes.

\* \* \*

Q. Do you remember approximately how many 900 number calls you had placed—

A. No. I don't.

Q. More than ten?

A. I don't know because I don't see the bills. I don't pay the bills. My secretary does that.

\* \* \*

Q. And why did you save [the mailing pieces]?

A. Because I was becoming disillusioned with the whole process that my name was appearing on the card and that I was told I had won something and I did not."

Plaintiff acknowledged at his deposition that his telephone records revealed that on October 8, 1991, he made 11 calls to various "900" numbers and, on October 26, 1991, he made 13 calls to various "900" numbers.

## THE FIRST AMENDED COMPLAINT

Counts I through IV of the first amended complaint were against Direct American, and count VII was against Illinois Bell; neither defendant is a party to this appeal. In count V of the first amended complaint, plaintiff alleged that defendant AT&T knowingly

received the benefits of Direct American's deceptive practices in violation of sections 2 and 2P of the Act. In count VI, plaintiff incorporated the allegations contained in count V and further alleged that AT&T violated section 9 of the Act by acquiring moneys by means of a deceptive practice under the Act. AT&T filed a motion to dismiss counts V and VI, arguing that the complaint failed to state a cause of action. On January 26, 1993, the trial judge dismissed those counts with prejudice. The judge stated that there was nothing in the Act, its legislative history, or case law to expand the Act "to those who provide the vehicle by which the deception is promulgated." Pursuant to Supreme Court Rule 304(a), the trial judge found that there was "no just reason to delay enforcement of or appeal from" the order. On plaintiff's motion to rehear and vacate the order, the trial judge entered an order on March 12, 1993, vacating the January 26 dismissal order. The March 12 order dismissed the counts without prejudice, allowed plaintiff to file a second amended complaint, and vacated the Rule 304(a) language in the January 26 order.

On April 12, 1993, plaintiff filed an "Agreed Motion" with no objection from AT&T. The "Agreed Motion" contained a proposed order to replace the March 12 order. In the motion, plaintiff explained that he wanted to be able to both amend the complaint as to AT&T and preserve the appealability of the trial court's dismissal of counts V and VI of the first amended complaint. On April 12, the trial judge entered the order as agreed. The order: (1) vacated the March 12 order; (2) dismissed with prejudice counts V and VI of the first amended complaint; (3) vacated the Rule 304(a) language of the January 26 order; (4) allowed plaintiff to file a second amended complaint; and (5) was entered *nunc pro tunc* as of March 12, 1993.

Initially, we address the status of counts V and VI of

the first amended complaint. Normally, a party filing an amended pleading waives any objection to the trial court's ruling on former complaints. *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153 (1983). Thus, plaintiff would apparently have waived appeal of the dismissal of counts V and VI of the first amended complaint when he filed his second amended complaint. As a general matter, however, a waiver rule is an admonition to the litigants, not a limitation on the jurisdiction of the reviewing court. *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 480 (1991). Here, plaintiff filed the "Agreed Order" of April 12 "in order to preserve the appealability of the Court's dismissal of Counts V and VI" of the first amended complaint and to allow plaintiff leave to amend his complaint. The trial judge entered the order the same day, and AT&T has not questioned that part of plaintiff's appeal brought on the first amended complaint. The ability to bring an appeal from two separate complaints based on the same cause of action was neither raised nor briefed in this court. We make no finding regarding its propriety at this time and address counts V and VI of the first amended complaint on their merits.

Count V of plaintiff's first amended complaint alleged that AT&T violated sections 2 and 2P of the Act by knowingly receiving the benefits of Direct American's fraud. We must determine whether knowingly receiving the benefits of another's fraud will support liability under sections 2 and 2P of the Act.

In construing a statute, courts are required to ascertain and give effect to the intent of the legislature. *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 454 (1995). Faced with a question of statutory construction, courts should first look to the language of

the statute to determine the intent of the drafters. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996). When the statutory language is clear, no resort is necessary to other aids of construction. *Henry v. St. John's Hospital*, 138 Ill. 2d 533, 541 (1990).

Section 2 lists conduct that violates the Act. Section 2 states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965 [815 ILCS 510/2 (West 1992)], in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1992).

We agree with AT&T that the plain language of section 2 of the Act does not include anything that makes it unlawful to knowingly receive the benefits of another's fraud. As this court stated in *Laughlin v. Evanston Hospital*, 133 Ill. 2d 374, 390 (1990), "[t]he language of the Act shows that its reach was to be limited to conduct that defrauds or deceives consumers or others." To allow plaintiff to recover for AT&T's knowingly receiving the benefits of Direct American's fraud would require us to read into the statute violations that are not a part of the statutory text.

Canons of statutory interpretation additionally guide our decision that knowingly receiving the benefits of another's fraud is not actionable under section 2 of the Act. When a statute provides a list that is not exhaustive, as section 2 does ("including but not limited to ***"), the class of unarticulated things will be interpreted as those that are similar to the named things.

*Board of Trustees of Southern Illinois University v. Department of Human Rights*, 159 Ill. 2d 206, 211 (1994). The common feature of the forms of conduct listed in section 2 of the Act is that they involve actions directly done by the perpetrator of the fraud. Knowingly receiving the benefits of another's fraud, however, more closely resembles a form of secondary liability. We believe that a claim for knowingly receiving the benefits of another's fraud is not so similar to the enumerated violations of section 2 of the Act that the legislature intended for it to be a cause of action under that statute. With no clear indication from the legislature that such conduct violates section 2 of the Act, we cannot extend liability to those who knowingly receive the benefits of another's fraud.

Section 10a of the Act, which is the provision that authorizes a private individual to bring a cause of action under the Act, supports our decision. Section 10a(a) states that "[a]ny person who suffers damages as a result of a violation of this Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a) (West 1992). The plain language of section 10a(a) provides a private cause of action against "such person" that "committed" the violation of the Act. The statute does not provide for a cause of action against those who knowingly receive benefits from the person committing the violation. In the face of such language, we will not create a cause of action under section 2 of the Act for knowingly receiving the benefits of another's fraud.

Plaintiff also alleged in the first amended complaint that AT&T violated section 2P of the Act by knowingly receiving the benefits of Direct American's fraud. Section 2P specifically relates to the disclosure of conditions on offers of free prizes, gifts, or gratuities. Section 2P states:

"It is an unlawful practice for any person to promote or advertise any business, product, or interest in property, by means of offering free prizes, gifts or gratuities to any consumer, unless all material terms and conditions relating to the offer are clearly and conspicuously disclosed at the outset of the offer so as to leave no reasonable probability that the offering might be misunderstood." 815 ILCS 505/2P (West 1992).

We believe that this provision clearly relates only to the person offering the free prizes, gifts or gratuities. The plain language of this statute does not pertain to those who knowingly receive the benefits of another's fraud.

We also conclude that plaintiff fails to state a cause of action under section 9 of the Act, as alleged in count VI of the first amended complaint. Section 9 states:

"Subject to an order of the court terminating the business affairs of any person after receivership proceedings held pursuant to this Act, the provisions of this Act shall not bar any claim against any person who has acquired any moneys or property, real or personal, by means of any practice herein declared to be unlawful." 815 ILCS 505/9 (West 1992).

The language of section 9 states that the provisions of the Act "shall not bar" certain claims. We do not believe that this language affirmatively gives rise to any claims. Further, the reference in section 9 to receivership proceedings must logically be read in conjunction with section 8 of the Act, which pertains to the distribution of assets of a person placed in receivership. When understood in that context, section 9 appears to refer only to claims against sellers placed in receivership. See *Rice v. Snarlin, Inc.*, 131 Ill. App. 2d 434, 442 (1970). As this situation is not before us, section 9 is inapposite and count VI of the first amended complaint must be dismissed.

We hold that sections 2 and 2P of the Act do not provide for a cause of action against a person who know-

ingly receives the benefits of another's fraud. Further, section 9 of the Act is inapplicable in the present case. Thus, we reverse that portion of the appellate court decision that reversed the trial court's order dismissing counts V and VI of the first amended complaint.

## THE FOURTH AMENDED COMPLAINT

In count V of the fourth amended complaint, plaintiff again alleged that AT&T violated section 2 of the Act. Unlike the allegations in the first amended complaint, that AT&T knowingly received the benefits of a fraud, the allegations here asserted that AT&T directly violated the Act by reviewing, revising, and approving Direct American's deceptive solicitations and recorded messages. Plaintiff further alleged that AT&T violated the Act by billing plaintiff for his calls to the "900" numbers in an allegedly misleading manner. The remaining counts against AT&T in the fourth amended complaint—counts VI and VII—alleged common law fraud. AT&T moved to dismiss the fourth amended complaint. A trial judge temporarily assigned to the case denied AT&T's motion to dismiss the counts against it in the fourth amended complaint; AT&T then answered the complaint.

AT&T later filed what it termed a "Motion for Summary Judgment on Unique Facts of Plaintiff's Individual Claim." AT&T argued in the motion that plaintiff's deposition testimony demonstrated that plaintiff was not actually deceived by the mailings or the telephone bills and that plaintiff therefore could not establish that any of AT&T's alleged misconduct had caused him injury. With specific reference to the statutory cause of action pleaded in count V of the fourth amended complaint, AT&T contended that the plaintiff's deposition established that the conduct complained of was not the proximate cause of any harm, as the Act requires. See *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996)

(though plaintiff need not establish reliance, valid claim by private plaintiff must show that alleged fraud proximately caused injury complained of). AT&T also argued that it was entitled to summary judgment on the common law counts. Following a hearing, the trial court granted AT&T's motion for summary judgment.

On review, the appellate court agreed with AT&T's contention that the Act required the plaintiff to establish proximate cause. The appellate court found plaintiff's deposition testimony to be inconclusive and incomplete on this issue, however, and therefore reversed the trial judge's grant of summary judgment. Dissenting, Justice Gordon believed that "plaintiff's admitted conduct precludes him from seeking any recovery under the relevant provisions of [the] Act." 286 Ill. App. 3d at 472 (Gordon, J., dissenting).

The elements of a claim under section 2 of the Act are: (1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) the occurrence of the deception in the course of conduct involving trade or commerce. *Connick*, 174 Ill. 2d at 501. As we noted in our earlier discussion, section 10(a) of the Act, which governs private causes of action under the statute, mandates that an individual's damages be "a result of a violation of [the] Act." 815 ILCS 5/10a(a) (West 1992). Thus, this court requires that a successful claim by a private individual suing under the Act also demonstrate that the fraud complained of proximately caused plaintiff's injury. *Connick*, 174 Ill. 2d at 501; see also *Warren v. LeMay*, 142 Ill. App. 3d 550, 569 (1986). This requirement would pertain as well to alleged violations of section 2P of the Act, which plaintiff also cites.

Unlike the allegations in the statutory counts in the first amended complaint, discussed previously, count V of the fourth amended complaint asserts that AT&T

directly violated the statute. At issue here is whether AT&T is entitled to summary judgment on these allegations because plaintiff's deposition establishes that the conduct complained of was not the proximate cause of his injury. Summary judgment is proper "where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996). Our review of an order granting summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

We believe that plaintiff's deposition testimony precludes him from establishing that the alleged misconduct by AT&T, including its supposed participation in Direct American's own asserted violations of the Act, proximately caused his damages. In the deposition, plaintiff acknowledged that when he received the mailings he did not know whether he had won a cash award and that he made the telephone calls only in the hope that he had won such an award. Plaintiff also said that he understood that he would be charged for each call he made. Plaintiff recalled that at the beginning of each call, he heard a recorded message telling him that he could avoid any charge for the call by immediately hanging up.

Plaintiff further acknowledged in the deposition that he knew that he could respond to the award notices by means of the mail instead of by calling the designated "900" number. Plaintiff explained that he did not use the mail, however, because he was eager to learn if he had won a cash prize. Plaintiff said that he continued to make calls even though he knew he had won only discount coupons with every previous call. On occasion,

plaintiff made numerous calls in short periods of time, winning only discount coupons with each call.

On this record, we do not believe that there exists a genuine issue of material fact whether the allegedly deceptive nature of the solicitations received by plaintiff caused him to incur the charges for the "900" number calls. Rather, it appears that plaintiff understood the requirements and costs of the program. Aware that he could respond to the solicitations through the mail, plaintiff instead voluntarily chose to learn about the prizes in a more expeditious, yet more expensive, manner.

The preceding discussion also answers the plaintiff's further contention that he was deceived by AT&T's manner of billing for the calls. By his own admission, plaintiff knew that he had not necessarily won cash prizes, that he did not have to call a "900" number to learn if had won such a prize, and that he would incur a charge if he did choose to learn his prize status by placing the calls. Nonetheless, plaintiff alleged that the bills were deceptive because they failed to disclose that his long-distance service would not be terminated if he refused to pay for the calls to Direct American. We note that plaintiff has not cited any authority in support of the contention that AT&T bore that duty. Although apparently it was AT&T's policy not to charge for calls to these numbers if customers complained about them, AT&T's conduct in that regard appears to be voluntary. In addition, we note plaintiff's statement in his deposition that he did not read or pay the bills himself, delegating those duties to his secretary. Accordingly, plaintiff could not have been misled by the allegedly deceptive nature of the bills. Plaintiff also alleged that the bills misrepresented that they contained only tariffed telephone charges when, in fact, they contained contest entry fees, which are not tariffed charges. The

bills, which are included in the record, do not make any representation regarding whether the charges are tariffed or not, however, and they plainly identify each "900" call and the cost of the particular call.

In sum, based on the testimony by plaintiff at his deposition, we do not believe that there remains a genuine issue of material fact whether the alleged violations of the Act by AT&T proximately caused his damage, for plaintiff's testimony demonstrates that he was not deceived by AT&T's actions. Plaintiff's statement in the deposition that he became disillusioned with the fact that his name appeared on cards and he "was told [he] had won something and [he] did not" is insufficient to show proximate cause between the alleged fraud by AT&T and plaintiff's alleged damage. In fact, plaintiff always did win something, though the prizes—discount coupons—were disappointing to him. As noted by the dissenting justice below, plaintiff was induced to place the calls "by the mere receipt of a personalized notice announcing that he won a prize, which, by his own admission, could have consisted of coupons rather than cash." 286 Ill. App. 3d at 472 (Gordon, J., dissenting). We therefore reverse that portion of the appellate court judgment that reversed the trial court's grant of summary judgment on count V of plaintiff's fourth amended complaint.

As a final matter, we note that AT&T has asserted, in its briefs and oral argument before this court, that plaintiff did not appeal from the portion of the circuit court judgment that granted AT&T's motion for summary judgment on the two common law counts against the company. The appellate court opinion does not address these counts. AT&T has not shown the plaintiff's supposed abandonment of these counts, however, by evidence in the record, nor has it presented in this appeal anything more than a brief argument in opposition to

those counts. Still, plaintiff does not dispute AT&T's contention that he failed to appeal that portion of the adverse circuit court judgment, or make any argument in support of the common law counts. In view of plaintiff's silence on this question, we do not feel compelled to search the record in this case to rebut AT&T's claim of abandonment. Accordingly, we offer no opinion on the merits of those counts.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is reversed, and the judgments of the circuit court of Cook County are affirmed.

*Appellate court judgment reversed;*
*circuit court judgments affirmed.*