FIRST DIVISION

June 28, 2004 

No. 1-01-3977 

DR. LEONARD SALTZMAN,

Plaintiff-Appellant,

v.

ENHANCED SERVICES BILLING, INC.,

and INFODEX, INC.,

Defendants-Appellees.
 

))))))))))

Appeal from the

Circuit Court of

Cook County

98 CH 2278

Honorable Julia M. Nowicki,

Judge Presiding.

JUSTICE McBRIDE delivered the modified opinion of the court upon denial of the petition for rehearing:

Plaintiff-appellant, Dr. Leonard Saltzman, appeals from summary judgment entered in favor of defendants-appellees, Enhanced Services Billing, Inc. (ESBI), and Infodex, Inc. (Infodex),
(footnote: 1) on plaintiff's second amended complaint (complaint).  The complaint, filed as a class action, alleged in count I that ESBI violated section 2 of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 2000)).  Count II was a claim  for restitution that was dismissed by the trial court on August 25, 2000.  On October 5, 2001, the trial court granted summary judgment in favor of ESBI on the ground that knowingly receiving benefits from someone else's fraud was not covered under section 2 of the Consumer Fraud Act.  Plaintiff appeals from that order.  

The sole issue on review is whether summary judgment in favor of ESBI was proper.  "Summary judgment is proper 'where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' [Citation.]"  
Zekman v. Direct American Marketers, Inc.
, 182 Ill. 2d 359, 374, 695 N.E.2d 853 (1998).  "Although use of the summary judgment procedure can be an efficient means for disposing of certain lawsuits, it is a drastic measure that should be employed only when the right of the moving party is clear and free from doubt. [Citation.]"  
O'Banner v. McDonald's Corp.
, 173 Ill. 2d 208, 211-12, 670 N.E.2d 632 (1996).  On a summary judgment motion, our standard of review is 
de novo
.  
Zekman
, 182 Ill. 2d at 374.  We state the following background facts.

Infodex was a telecommunications information service provider that furnished information when a consumer phoned a certain "900" number.  Specifically, the complaint alleged that Infodex provided "services such as sports and weather information when consumers telephone a particular phone number with a '900' prefix."  A consumer's "900" number activity was recorded on a magnetic tape or was electronically transmitted by Infodex to billing clearing houses for the collection of fees.  ESBI is an enhanced billing clearing house that bills consumers directly, or through local telephone companies, for services provided from other businesses within the telecommunications industry.  ESBI and Infodex had a contract in which ESBI would process the magnetic tapes and electronic transmissions from Infodex.  ESBI would then send the billing information to the local exchange carriers, such as Ameritech, for inclusion on the customer's telephone bill.  

Plaintiff alleged that, during 1997, he received a series of telephone bills from Ameritech, his local telephone service provider, that included a charge for an "Infodex Net Listing" service from ESBI.  Plaintiff paid these charges without realizing what they were for.  He alleged that he never authorized these "Infodex" or "Net Listing" services that were charged from ESBI.
  

After receiving a phone bill from Ameritech dated July 10, 1997, which contained another ESBI charge in the amount of $5.86, plaintiff telephoned Ameritech and ESBI and sought to determine who authorized the ESBI charges that had been appearing on his phone bill.  Plaintiff alleged that neither Ameritech nor ESBI could provide any information on who authorized the charge or what Infodex was.  He further alleged that he received nothing for these Infodex listing services.

On September 10, 1997, plaintiff claimed that he received another telephone bill containing charges from ESBI.  He was able to have this charge cancelled but he could not cancel the earlier charges for which he had already paid. 

In paragraph 25 of the complaint, plaintiff specifically alleged:

"It is the practice of ESBI to receive billing information from Infodex, and without any reasonable evidence of authorization, and knowing that ESBI could not provide any reasonable evidence of authorization, to place the bogus charge on the victim's telephone bill.  The placing of the bogus charge on a victim's phone bill is a representation that the victim actually owes the bogus charge." 

In paragraph 27 of the complaint, plaintiff alleged:

"The placement of a bogus charge on a phone bill is misleading and deceptive, in that victims are led to believe that the charges on the utility bill are legitimate by its very inclusion on the amount owed to the telephone company. Moreover, withholding the amount due from the phone bill subjects the victim to late fees and credit problems with the phone company, so the victim pays regardless of whether he thinks it is actually owed." 

In paragraph 28, the complaint alleged, in relevant part:

"When the telephone company obtains payment of the bogus charges, the money is relayed to [ESBI]. [ESBI] then subtracts the amount of their fees off the top, and forwards the remaining money to Infodex."

As a result of the above conduct, the complaint alleged that ESBI engaged in unfair and deceptive acts and practices by adding charges to customer's telephone bills for which it could not produce any contract or authorization.  Such conduct, according to plaintiff, amounted to a violation of section 2 of the Consumer Fraud Act.

On June 5, 2001, ESBI moved for summary judgment on the ground that that ESBI did not violate section 2 of the Consumer Fraud Act.      In an affidavit, Jeanne Jackson, vice president of customer service for ESBI, testified that ESBI had a contract with Infodex where ESBI processed the magnetic tapes and/or electronic transmissions provided by Infodex.  Once ESBI received the charges from its customers and performed a data processing function, ESBI then sent the billing information to Ameritech for inclusion on the customer's telephone bill.  In short, Jackson explained that ESBI acted "as a middleman in transferring the funds between the local exchange carrier [Ameritech] and its customers, including Infodex."  Because ESBI was simply performing a data processing function, Jackson claimed that ESBI had no way of knowing whether a given charge was erroneous.  

She also stated that, if a telephone customer complained about an error on his or her bill, either ESBI, its client, or Ameritech would investigate the claim.  If a charge was made in error, ESBI would forward an electronic credit to Ameritech in order to credit the customer's account for the amount erroneously billed.  Jackson said that she examined plaintiff's account records regarding the Infodex bills.  Those records demonstrated that Infodex charges appeared on plaintiff's phone bill five times during the period between April and August 1997, amounting to $27.15.  She further said that plaintiff telephoned ESBI on September 8, 1997, and registered a complaint regarding the Infodex charges that appeared on his bill.  ESBI registered plaintiff's complaint and arranged two credits for Infodex charges at that time.  ESBI then reviewed plaintiff's records and issued him credits for the remaining three Infodex charges.  According to Jackson, therefore, plaintiff received a full refund for all the Infodex charges that appeared on his telephone bill.

In her deposition, Jackson, without any explanation, stated that ESBI relied upon the contract between it and Infodex to ensure the Infodex charges to customers were legitimate.  She also said that ESBI did not individually contact customers to make sure the charges were authorized and that ESBI presumed the charges were legitimate.  As  a billing clearinghouse, Jackson said, ESBI was not in a position to determine whether the Infodex charges on a customer's bill were authorized. She stated that no Infodex letters of authorization from customers existed in the ESBI database and that, to her knowledge, ESBI got paid its fee from Infodex regardless of whether the charge was authorized by the customer.

Jackson also testified that it was ESBI's general practice to remove charges for customers who called in and stated that the charges were not authorized.  She further stated that it was more than likely that ESBI would issue credit to 100% of the customers who called ESBI and complained that the charges were unauthorized.  However, she also said that, if customers did not call and complain, ESBI would retain its fee anyway regardless of whether the charge was authorized.       

Plaintiff testified in his deposition that, after missing the first or second charges, he noticed an Infodex charge from ESBI on a subsequent telephone bill sent to him by Ameritech.  He said that  he had no idea what these Infodex charges were.  As a result, he contacted a customer service representative from ESBI.  The representative, however, could not tell him the basis for the charges and informed him that ESBI just passed along the billing.  Plaintiff also said that when he contacted ESBI, he asked if it had a contract with his authorization signature on it and ESBI said that it would look into it and would let him know.  Plaintiff said that he never heard back from ESBI on the matter.  Plaintiff testified that he was charged on three billing dates in the amount of $5.43, and that he received two credits from ESBI in the amount of $10.86, but he did not think he was ultimately credited for all of the charges.

Plaintiff also stated that, when he called Ameritech about the suspect charges and asked it what would happen if he did not pay that portion of the bill, Ameritech informed him that he must pay the entire bill.  He explained that he chose to sue ESBI because the company's name appeared on his bill and he felt he was being charged by ESBI for services he had never requested or authorized.  
 On October 5, 2001, the trial court granted summary judgment in favor of ESBI based on the supreme court's ruling in 
Zekman
, which held that liability under section 2 of the Consumer Fraud Act could not be extended to those who knowingly received the benefit of another's fraud as opposed to those who actually or directly participated in the fraud.  
Zekman
, 182 Ill. 2d at 370.  Specifically, the trial court stated:

"It is my conclusion that that language [from plaintiff's complaint] is the equivalent of knowingly receiving the benefit of another's fraud.  Accordingly, under the first part of the 
Zekman
 case whether we like it or not, what it says is that: Knowingly receiving benefits from someone else's fraud is not covered under the Act.

We then go to the discussion of the Fourth Amended Complaint [in 
Zekman
].  It's my conclusion for [the instant] complaint to survive it must allege something that is tantamount to reviewing, revising, and approving or something which established direct knowledge -- directly violating the statute as opposed to this is secondary violating the statute.

So I think the 
Zekman
 case is pretty strong."

We now address whether the summary judgment entered in favor of ESBI was proper.  Section 2 of the Consumer Fraud Act states, in pertinent part:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretenses, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.  In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."  815 ILCS 505/2 (West 2000).  

ESBI contends, based upon the holding in 
Zekman
, that the trial court properly entered summary judgment in its favor because the undisputed facts established that ESBI did not actively or directly participate in the alleged fraud.  Plaintiff responds by asserting that 
Zekman
 is not controlling because ESBI actively participated in the fraud by charging consumers for services they never received when ESBI knew that the charges were "bogus."  In its second amended complaint plaintiff alleged that ESBI placed "bogus" or false charges on a customer's bill because it had no "evidence of authorization" of the charge and knew it could not provide "evidence of authorization."  Nonetheless, ESBI represented to the customer that it owed for the charge.  In essence, the complaint alleges that ESBI engages in a practice of billing customers and representing that those customers owe money when they have knowledge that there is no authorization or contract for the charge and no authorization can be provided.  Plaintiff claims that these "bogus" billing charges to customers is a direct violation of the Consumer Fraud Act.  At the very least, plaintiff suggests that the trial court erred in granting summary judgment for ESBI because a question of fact exists as to whether this type of billing made ESBI a direct participant in the alleged fraud.

In 
Zekman
, the plaintiff filed an amended class action suit against Direct American Marketers, Inc. (Direct American), AT&T, and Illinois Bell Telephone Company.  Count V of the first amended complaint alleged that AT&T violated section 2 of the Consumer Fraud Act by knowingly receiving the benefits of Direct American's fraud.  The trial court granted AT&T's motion to dismiss the claim.
  The plaintiff filed second and third amended complaints that were withdrawn in response to motions to dismiss filed by AT&T.  The plaintiff then filed a fourth amended complaint which, in count V, alleged that AT&T directly violated section 2 of the Consumer Fraud Act.  Specifically, count V of this complaint asserted that AT&T directly violated the Consumer Fraud Act by "reviewing, revising, and approving Direct American's deceptive solicitations and recorded messages."  The trial court granted AT&T's and Direct American's motions for summary judgment.  The plaintiff appealed both the decision to dismiss the plaintiff's claim in count V of the first amended complaint and the grant of summary judgment on count V of the fourth amended complaint.  The appellate court reversed.

On review in the supreme court, the facts revealed that the plaintiff received a series of separate mailings from Direct American which generally indicated that the plaintiff had won a prize.  While it was possible to respond by using the mail, the mailings encouraged recipients to call a "900" number in order to immediately claim their prize.  The prizes ranged from discount coupons to cash rewards.  By calling the "900" number, recipients incurred charges on their telephone bill, which were disclosed in the mailings, usually between $8 and $10 dollars per call.  The plaintiff made numerous calls to various "900" numbers and won only discount coupons, never a cash reward.  AT&T billed the plaintiff for the charges, retained a percentage, and the remainder of the charges went to Direct American. 

AT&T reviewed Direct American's mailings for the purpose of ensuring that they complied with AT&T guidelines, and state and federal laws prohibiting false, deceptive, and misleading advertising and trade practices.  Periodically, AT&T determined that Direct American's proposed mailings were misleading and required Direct American to make certain changes before they were mailed.  AT&T also had a policy to provide refunds for customers who contested charges for their calls to Direct American.

During the course of the litigation, the plaintiff was deposed.  In his deposition, the plaintiff testified that when he got the mailings from Direct American, he responded to them because he thought that his name on the card meant something.  He further said that he read the mail pieces in a cursory fashion, meaning that he only spent enough time reading the mailing to determine that his name was on it, "and if there was a cash award on it."  
Zekman
, 182 Ill. 2d at 365.  In his testimony, the plaintiff testified that he was aware that he could have determined whether he had won by using the mail, but he  chose not to because he was eager to find out if he had won a prize and he would find out more quickly by calling.  He further said that he knew that there would be a charge associated with calling the "900" number and that he heard a message at the beginning of the call indicating that, if he hung up, he would not be charged for the phone call.  Zekman also acknowledged that his telephone records indicated that he made 11 calls to various "900" numbers on October 8, 1991, and that he made 13 calls to various "900" numbers on October 26, 1991.  
Zekman
, 182 Ill. 2d at 366. 

After examining section 2 of the Consumer Fraud Act, the supreme court in 
Zekman
 agreed with the trial court's dismissal of count V of the first amended complaint because section 2 of the Consumer Fraud Act only contemplated actions taken directly by the perpetrator of the fraud.  
Zekman
, 182 Ill. 2d at 370.  The court stated that "[k]nowingly receiving the benefits of another's fraud *** more closely resemble[d] a form of secondary liability."  
Zekman
, 182 Ill. 2d at 370.  As a result, it found that liability could not be extended to those who knowingly receive the benefits of another's fraud.  
Zekma
n, 182 Ill. 2d at 370.  It therefore affirmed the trial court's dismissal of count V of the first amended complaint.

With regard to count V of the fourth amended complaint filed by Zekman, the supreme
 court determined that a private individual suing under the Consumer Fraud Act must demonstrate that the fraud complained of proximately caused the plaintiff's injury.  
Zekman
, 182 Ill. App. 3d at 373.   Since the plaintiff testified in his deposition that he willingly made the calls because he was eager to find out whether he had won an award, the court held that this testimony precluded him from establishing that AT&T's alleged misconduct proximately caused his damages.  
Zekman
, 182 Ill. 2d at 374-75.  On this ground, the court found that the trial court properly entered summary judgment in favor of AT&T.  
Zekman
,  182 Ill. 2d at 377.  

Based upon our review of 
Zekman
 and the pleadings, affidavits, depositions, admissions, and exhibits on file, we conclude that questions of fact remain with  regard to whether ESBI was a direct participant in the alleged fraud set out in plaintiff's complaint.

In the instant case, Jackson stated in her affidavit that ESBI sent billing information to Ameritech for inclusion on the customer's phone bill.   In her deposition, she testified that, while ESBI had no records of authorization from Infodex or the customer, it presumed the charges billed were authorized.  She also said that ESBI was paid by Infodex whether or not the charges were authorized by the customer.  When a customer complained, Jackson stated that it was the general practice of ESBI to remove the charges and issue the customer credit.  However, if the customer did not complain, ESBI would take its fee regardless of whether the customer had authorized the charge.

Thus, Jackson admitted that, while ESBI had no way of verifying the Infodex charge, it still billed plaintiff for the charge, represented to plaintiff that the charge was owed, identified itself on plaintiff's bill, and did not refund money for unauthorized charges until plaintiff complained.  Significantly, had plaintiff not complained to ESBI, he would have incurred charges that were not authorized and for which he received no value.

Further, plaintiff testified that he never authorized these "Infodex" or "Net Listing" services that were charged from ESBI.
  
He further stated that neither Ameritech nor ESBI could provide any information on who authorized the charge.  He also said that he received nothing for the Infodex listing services for which he was allegedly billed.

As we noted above, the complaint in this case alleged that it was ESBI's practice to receive billing information from Infodex, and without any evidence of authorization, place the "bogus" charge on the victim's telephone bill, in effect, representing that the customer owed the charge.  In our view, these allegations are  different from the one made in count V of the first amended complaint in 
Zekman
, which only alleged that AT&T knowingly received the benefits of Direct American's deceptive practices in violation of section 2 of the Fraud Act. 

Here, paragraph 25 of the complaint alleged that it was ESBI's practice to receive billing information from Infodex, and without any reasonable evidence of authorization, place these charges onto a customer's bill.  In effect, ESBI affirmatively represented that the victim actually owed these charges, without any verification that the charges were legitimate.  It then profited when the customer paid the phone bill regardless of whether the charges were authorized.  As we noted above, Jackson, in her deposition, admitted that it was the practice of ESBI to credit a customer who complained almost 100% of the time because ESBI had no way of determining whether the charges were valid.  In the event a customer did not complain, however, ESBI would take its fees and pass the reminder on to Infodex.

In 
People ex rel.Hartigan v. Stianos
, 131 Ill.  App. 3d 575, 475 N.E.2d 1024 (1985), a case cited by plaintiff, a complaint for injunctive and other relief was brought against the defendants
, the owners of a Mini Mart in Lake County, Illinois.  The defendants were engaged in the sale of food and nonprescription drugs for which the applicable sales tax rate in Lake County was 1.25%.  The complaint alleged that an investigator from the Attorney General purchased Bayer Aspirin, a nonprescriptive drug, from the defendants on April 24, 1984, and was charged 8 cents for sales tax, which was a rate of 6.20% for the purchase.  On June 11, 1984, an investigator purchased Vicks Cough Syrup from the defendants for $2.99, and was charged 18 cents for sales tax, which was a rate of 6.02%.  Finally, on July 5, 1984, the investigator purchased Anacin, a nonprescriptive drug, from defendants for $2.99 and was charged 18 cents for sales tax, which was a rate of 6.02% for the purchase. 

In the complaint, the Illinois Attorney General, under the Consumer Fraud Act, sought to enjoin the defendants from charging to consumers sales tax in excess of the amount authorized by law.  Based on the allegations in the complaint, the trial court entered a temporary restraining order.  The defendants moved to dismiss the complaint on the ground that it failed to state a cause of action.  The trial court granted the motion in part, striking one part of the prayer for relief which sought civil penalties.  At the close of the plaintiff's case, the defendants sought a motion for directed finding, which was granted by the trial court on three grounds: (1) the plaintiff failed to prove the defendants engaged in the conduct complained of with the intent to deceive; (2) the conduct was 
de minimis
; and (3) the plaintiff failed to show a likelihood of success on the merits.  The trial court then denied the preliminary injunction and dissolved the temporary restraining order.  The Attorney General appealed.

The appellate court, after reviewing section 2 of the Consumer Fraud Act, concluded that the practice described in that case was deceptive and unfair as those terms were used in the statute.  
Stianos
, 131 Ill. App. 3d at 581.  It also found that the supreme court recognized the terms "deceptive" and "unfair" were "not capable of precise definition, and whether a given practice [was] unfair or deceptive must be determined on a case-by-case basis." 
Stianos
, 131 Ill. App. 3d at 581.  The appellate court additionally observed that section 2 of the Consumer Fraud Act provides that, "in determining whether a practice is unlawful as unfair or deceptive, consideration is to be given to the interpretations of the Federal Trade Commission and the Federal courts" under the Federal Trade Commission Act (15 U.S.C. §45 (1982)).  
Stianos
, 131 Ill. App. 3d at 581;  815 ILCS 505/2 (West 2000).  

With respect to the facts in that case, the 
Stianos
 court concluded that overcharges by the defendants, if allowed to continue, could amount to very substantial losses to consumers.  
Stianos
, 131 Ill. App. 3d at 581.  The court also found that it was unfair to permit the extraction of excessive sums from the consumer under the guise that it was a lawful tax.  
Stianos
, 131 Ill. App. 3d at 581.  As a result, the appellate court reversed the trial court,  instructed it to deny the defendant's motion for directed finding, and ordered it to proceed with the plaintiff's motion for preliminary injunction.  
Stianos
, 131 Ill. App. 3d at 582. 

We find the facts in 
Stianos
 instructive.  Here
, ESBI engaged in the practice of representing an amount owed on a customer's Ameritech phone bill.  Jackson's testimony confirms that ESBI placed the charges on plaintiff's phone bill but could not verify the accuracy of the charges or whether the charges were authorized.  Nonetheless, ESBI made the representation that the charges were valid and were due and owing.  ESBI admitted that, because it could not verify the validity of the charges, it reimbursed customers in full nearly all of the time.  If, however, a customer did not complain, ESBI profited by taking its fee.   

In 
Stianos
, the appellate court found that overcharging customers on sales tax rates was both deceptive and unfair.  
Stianos
, 131 Ill. App. 3d at 581.  The 
Stianos
 court further found that it was unfair to charge the consumers excessive sales tax sums under the guise of a lawful tax.  
Stianos
, 131 Ill. App. 3d at 581.  Here, as noted in plaintiff's complaint, ESBI engaged in the practice of placing a "bogus" charge on a consumer's phone bill representing that the customer actually owed the "bogus" charge, when it had no basis to make such a representation.  

Based on the decision in 
Stianos
, we find that a question of fact exists as to whether the practice of billing phone customers, for charges that are not authorized and cannot be verified while representing that charges are owed, amounts to a direct participation in the fraud under section 2 of the Consumer Fraud Act. 

We also conclude that a consent order, which named ESBI in a federal district court case and was made part of this record, raises a question of material fact as to whether ESBI may have been directly involved in the fraud complained of here.  As we noted above, section 2 of the Consumer Fraud Act requires us to consider "the interpretations of the Federal Trade Commission [FTC] and the federal courts relating to Section 5(a) of the Federal Trade Commission Act [Trade Commission Act]."  815 ILCS 505/2 (West 2000).  Plaintiff has included in the record a consent order issued by the United States District Court for the District of Columbia on or about May 10, 2001, which involved a complaint brought by the United States of America against ESBI under section 5(a)(1) of the Trade Commission Act.  15 U.S.C. §45(a)(1) (2000).  

While we acknowledge the consent order was expressly limited to settlement efforts and was not an admission by ESBI of a Trade  Commission Act violation, the order prohibited ESBI from submitting a billing record to any local exchange carrier (Ameritech) for inclusion on a line subscriber's (customer's) bill, from billing, or from collecting or attempting to collect payment from the customer, when ESBI knew or should have known that the charge being billed or collected was not expressly authorized by the customer.  It further ordered that ESBI was restrained from making any misrepresentation that any "Line Subscriber [was] obligated to pay for the purchase of any Telephone-Billed Good or Service that the Line Subscriber did not expressly authorize."  The consent order also required ESBI to write and produce a report containing, among other things, the name and address of any third-party verification company to be used by the vendor (Infodex).  Significantly, the conduct by ESBI that is restricted in the consent order is similar to the conduct complained of in plaintiff's complaint.

As previously mentioned, paragraph 25 of the complaint here stated:

"25.  It is the practice of ESBI to receive billing information from Infodex, and without any reasonable evidence of authorization, and knowing that ESBI could not provide any reasonable evidence of authorization, to place the bogus charge on the victim's telephone bill.  The placing of the bogus charge on a victim's phone bill is a representation that the victim actually owes the bogus charge."

Paragraph 38 of the complaint stated:

"38.  The defendants engaged in unfair and deceptive acts and practices by causing charges to be added to customers' telephone bills for which it cannot produce any contract or authorization.  The defendants thereby violated §2 of the Consumer Fraud Act, 815 ILCS 505/2."  

Since the conduct complained of in the instant case is the same type of conduct prohibited by the consent order referred to above, we find there is a question of fact as to whether the conduct of ESBI was a direct violation of the Consumer Fraud Act.

We are not persuaded by ESBI's reliance on 
Davies v. Arthur Murray, Inc.
, 124 Ill. App. 2d 141, 151, 260 N.E.2d 240 (1970), which ESBI claims stands for the proposition that a trial court is justified in disregarding the evidentiary value of a consent order  where no testimony was taken and the order was a mere matter of agreement between the Federal Trade Commission and the respondents in that case.  

We reiterate that section 2 of the Consumer Fraud Act expressly states that "consideration 
shall
 be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section  5(a) of the Federal Trade Commission Act."  (Emphasis added.)  815 ILCS 505/2 (West 2000).  Thus, we have a statutory mandate to consider the consent decree from the federal court which actually involved the conduct of ESBI, the named defendant in the instant case.  Since the defendant in the consent order and in this case is the same, we find that the consent decree from the federal court prohibiting certain conduct by ESBI can and should be considered for purposes of reviewing the summary judgment order entered in this case.  Further, 
Davies
 was decided more than three decades ago and did not involve the Consumer Fraud Act.  We therefore find it inapposite. 

We also find that the summary judgment granted in 
Zekman
 with regard to count V of the fourth amended complaint does not control under the facts in this case.  
In 
Zekman
, specifically in
 count V of the fourth amended complaint
, the plaintiff did not allege that AT&T violated section 2 of the Consumer Fraud Act by knowingly receiving the benefits of the fraud, but by "directly [violating] [section 2 of the Consumer Fraud] Act by reviewing, revising, and approving Direct American's deceptive solicitations and recorded messages."  
Zekman
, 182 Ill. 2d at 372.  AT&T moved to dismiss the fourth amended complaint, which was denied by the trial court.  AT&T then answered the complaint and filed a "Motion for Summary Judgment on the Unique Facts of Plaintiff's Individual Claim."  

In the motion, AT&T argued that the plaintiff's deposition testimony demonstrated that the plaintiff was not actually deceived by the mailings or the telephone bills and that, therefore, the plaintiff could not demonstrate that AT&T's alleged misconduct caused him any injury.  Specifically referring to count V of the fourth amended complaint, AT&T claimed that plaintiff's deposition established that the conduct complained of was not the proximate cause of any harm required by the Fraud Act.  

The trial court granted AT&T's motion for summary judgment.  The appellate court agreed with AT&T that the Consumer Fraud Act required the plaintiff to establish proximate cause, but found the plaintiff's deposition testimony to be inconclusive on the issue and reversed the trial court's summary judgment in favor of AT&T.

On review, the supreme court found that the elements of a fraud claim under section 2 are: "(1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) the occurrence of the deception in the course of conduct involving trade or commerce. [Citation.]"  
Zekman
, 182 Ill. 2d at 373.  In addition to these elements, the court further found that a private individual suing under the Consumer Fraud Act must demonstrate that the fraud complained of proximately caused the plaintiff's injury.  
Zekman
, 182 Ill. App. 3d at 373.  

In reviewing the plaintiff's deposition, the supreme court noted that the plaintiff understood he would be charged for each call made and that he could avoid any charge for the call by immediately hanging up.  The plaintiff further acknowledged that he knew he could respond to the award notices by means of mail, yet he chose to call the designated "900" number because he was eager to learn if he had won a cash prize.  As a result, the court held that the deposition testimony precluded the plaintiff from establishing that AT&T's alleged misconduct proximately caused his damages.  
Zekman
, 182 Ill. 2d at 374.  The supreme court then reversed the portion of the appellate court's judgment which reversed the trial court's grant of summary judgment on count V of the plaintiff's fourth amended complaint.  
Zekman
, 182 Ill. 2d at 376.  

We find that 
Zekman
, with respect to its grant of summary judgment on count V of the fourth amended complaint, is distinguishable because the proximate cause that was absent in 
Zekman
 has yet to be determined here.  In 
Zekman
, the plaintiff admitted in his deposition that he made the phone calls, as opposed to using the mail, because he was eager to find out whether he won a cash award.  His telephone records also indicated that he made 24 calls to various "900" numbers on two separate occasions.  

In the instant case, plaintiff alleged that he never authorized these "Infodex" or "Net Listing" services that were charged from ESBI.  Further, in her deposition, Jackson stated that ESBI was not in a position to determine whether the Infodex charges on a customer's bill were authorized.  She also stated that ESBI credited plaintiff in full for the charges that appeared on his bill, although plaintiff disputes that he was reimbursed completely for the "bogus" charges.  Thus, the instant case differs from 
Zekman
 because there, Zekman admitted making the calls whereas here, plaintiff stated that the charges were unauthorized, which, in effect, meant that he did not make the calls.  ESBI admitted that it could not verify whether the calls were made.  It is undisputed, however, that ESBI billed plaintiff for these calls despite the fact that it could not verify whether the charges were proper.  Thus, the proximate cause of the injury that was absent in 
Zekman
 is a question of fact which remains.

Because there were questions of material fact whether ESBI actually participated in the fraud alleged in plaintiff's complaint, the trial court improperly granted ESBI's motion for summary judgment.  We therefore reverse the trial court's order of October 5, 2001, and remand for further proceedings consistent with this order.

The judgment of the trial court is reversed.

    Reversed.

CAHILL and GARCIA, JJ., concur.

 

FOOTNOTES
1:  On October 5, 2001, plaintiff voluntarily dismissed Infodex from the action on the ground that it was defunct.