FIRST DIVISION
NOVEMBER 05, 2007

Nos. 1-06-0731; 1-06-2839 ( Cons.)

| | | |
|---|---|---|
| SHEILA LUSS, Special Administrator of the Estate of Carl D. Luss, Jr., deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 02 L 064038 |
| THEVILLAGE OF FOREST PARK, LUCIUS BAKER, WAL-MART STORES EAST, INC., MARTIN MOY and WAL-MART LOSS PREVENTION EMPLOYEE JOHN DOE, | ) ) ) ) ) ) | Honorable Donald J. Suriano, Judge Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiff Sheila Luss is the special administrator of her deceased brother's estate and the caregiver of her 11-year-old nephew. Plaintiff brought this suit after her brother hanged himself in a detention cell in a police station in the Village of Forest Park, Illinois, shortly after he had been arrested for shoplifting at a Wal-Mart's store in Forest Park.

Reginald Young, the Wal-Mart security guard primarily responsible for apprehending Luss, died in an unrelated accident four months after Luss's arrest. Defendant Lucius Baker, the police officer responsible for monitoring Luss in his cell, was terminated from the police department six months after Luss's arrest for unrelated misconduct.

The defendants are: police officer Lucius Baker; theVillage of Forest Park, the employer

of Baker and other officers at the police station; Wal-Mart Stores, Inc., which claims it was incorrectly sued as "Wal-Mart Stores East, Inc.";  Martin Moy, who was the loss-prevention supervisor at the Wal-Mart store in Forest Park at the time of Luss's apprehension; and "John Doe," who is identified in plaintiff's complaint as the Wal-Mart employee who "stopped" Luss and who "maced" him. Depositions later revealed that the Wal-Mart employee who initially stopped Luss and subsequently sprayed  Luss with mace was the now-deceased Reginald Young.

The circuit court of Cook County granted defendants' motions for summary judgment, and this appeal followed.   Defendant Wal-Mart moved to dismiss defendant Martin Moy from this appeal on the ground that he had never been served and no appearance had ever been filed on his behalf.  On July 19, 2007, this court granted defendant Wal-Mart's motion and dismissed defendant Martin Moy from this appeal.   For the following reasons, we affirm the circuit court's order with respect to the remaining defendants.

## BACKGROUND

The events giving rise to this action occurred mainly in two locales and involving two groups of actors. The two locales were the Wal-Mart store in Forest Park, and the Forest Park police station.  The two groups of actors were Wal-Mart employees and Forest Park police officers.  For ease of discussion, we will discuss first the actions of the Wal-Mart employees and then the actions of the police officers.

### Actions of Wal-Mart Employees

The depositions, admissions and other documents filed in this case establish the following facts.  Carl Luss  was shopping at the Wal-Mart store in Forest Park, when Reginald Young, a

security guard, detained him outside the store. Officer Roberto Salas of the Forest Park police department testified at his deposition that Young was also a corrections officer. [1] Young was never deposed because he died in an unrelated accident four months after the arrest.

Former defendant Martin Moy testified at his deposition that he was the "District Loss Prevention Supervisor" for the Wal-Mart store at the time of Luss's arrest. On February 2, 2002, shortly after Luss's arrest, Moy spoke to Young on the telephone concerning the arrest. However, Young's statements to Moy are inadmissible hearsay.

Ed Smith, who was then co-manager of the Wal-Mart store, testified at his deposition that he noticed people running to exit the store, including Brandon Hunter, a Wal-Mart assistant manager. Outside the store, Smith observed Young rubbing his eyes and Hunter struggling with Luss on the pavement. Smith heard Young state that Luss had maced him. Officer Andrea Caines from the Forest Park police department also testified that a Wal-Mart security guard told her that he had been sprayed with mace by Luss, and Officer Salas from the Forest Park police department testified that Luss had been maced.[2]

Smith further testified that, at first, Luss was down on the pavement, and then Luss was

---

[1] Former defendant Moy testified at his deposition that Young was "a jail guard" employed by the Cook County sheriff's department.

[2] At his deposition, Officer Salas was asked: "Did you see Mr. Luss injured?" Salas responded: "I believe his knuckles were bleeding. And he was maced." Salas did not state how he knew Luss had been maced.

assisted to a standing position by a wall and refused to drop the mace cannister in his hand. While Luss was standing by the wall, Hunter and Smith forced Luss's hand open in order to retrieve the mace cannister. Smith observed Luss's hands bleeding. Smith observed other Wal-Mart employees exit the store, including David Tremmel, the store manager, and Eric Struck, a loss prevention employee.

Eric Struck testified at his deposition that he was in the Wal-Mart store when he heard a store page for "Department 77," which is a code calling for loss-prevention personnel. The code was either for the front of the store or for the Mc Donald's restaurant that was located near the front. Struck ran toward McDonald's and observed a group of customers looking toward the door. Struck exited through the door and ran toward a group of people consisting of three men, one of whom was Young, another was a member of management and the third was Luss, who was in the middle of the two Wal-Mart employees. Struck heard Young state that Luss had maced him and that what Luss stole was inside the store.

Struck further testified that Luss still had the mace cannister in his hand, when he told Luss to drop the cannister several times. Struck then grabbed Luss's hand and someone knocked the cannister out of Luss's hand. Struck forced Luss to the ground on his stomach and Struck laid on top of him. Struck is 5 feet 11 inches and 200 pounds. Struck retrieved his Wal-Mart issued handcuffs from his pants and handcuffed Luss with Luss's hands in front.[3] After Luss was

---

[3]Officer Salas testified at his deposition that when he arrived at the Wal-Mart store, he saw Young in front of the store with Luss, who was already handcuffed with his hands in front.

4

handcuffed, Struck helped Luss stand up and Young left to wash the mace off his face. Struck asked Luss if he had any diseases or drug addictions, and Luss replied that he had AIDS and used heroin. While facing the wall, Luss kept attempting to turn around to spit over his shoulder. After the Forest Park police arrived, Struck informed them that Luss had AIDS, was a heroin user and was spitting.[4] Struck recalled seeing Officer Baker, whom Struck knew from Baker's employment as a security guard with the Wal-Mart store. Even after the police arrived, Struck continued to observe Luss struggling and spitting.

David Tremmel, the store manager, testified at his deposition that he saw a register with customers in line but no sales associate to check them out. When Tremmel asked what had happened, a customer said that the cashier had just run outside. When Tremmel went outside, he saw Luss on the ground on his stomach, still struggling, and saw Brandon Hunter and Eric Struck, other Wal-Mart employees, attempting to restrain Luss. Tremmel "think[s]" that he helped them stand Luss up. Tremmel recalled that a Wal-Mart employee was trying to pry a mace cannister out of Luss's hand and that Luss was resisting by turning and jerking, left and right.

Struck testified that after the police left with Luss, he drove to the police station to see if he would be needed, but Officer Baker informed Struck that a criminal complaint was not ready

Officer Caines also testified at her deposition that when she arrived, Luss was already handcuffed with his hands in front and was in front of the store with a Wal-Mart security guard.

[4]Officer Caines also testified that Luss stated that he had AIDS.

to be signed at that time.  Struck later obtained the videotape from the camera located at the entrance of the store and reviewed it, but he did not describe its contents at his deposition.[5] During the evening of February 2, 2002, Struck testified that he found the DVD player taken by Luss but did not recall where he found it.  At his deposition, Struck did not explain how he knew this DVD player was the merchandise taken by Luss.  Struck brought the DVD player to the loss- prevention office in the store and placed it under a desk where it remained for over a month.

Former defendant Martin Moy testified that, on February 4, 2002,  he observed the home entertainment system allegedly taken by Luss, in Wal-Mart's loss-prevention office, and took a Polaroid photograph of it.  However, Moy did not explain at his deposition how he knew that this system was the merchandise allegedly taken by Luss.  Moy further testified that the system was later returned to the shelves.[6]  Ed Smith, the store's co-manager,  testified that he saw the system on February 2, 2002, but does not recall how he knew it was the item Luss had taken.   Moy testified that store videotapes from the day in question were currently in the possession of  the Forest Park police department.

---

[5]When asked when he had learned that Young had maced Luss, Struck replied: "I think we were reviewing the tape."  However, Struck did not state whether the tape showed Luss being sprayed by mace or whether Young or someone else informed Struck of this fact while they were viewing the tape together.

[6]Former defendant Moy explained that "if we tagged every item that was recovered as evidence from a shoplifter, we'd probably have another store."

6

Former defendant Moy testified Moy had worked for Wal-Mart part-time while working full-time for the Forest Park police department and then retired to a full-time position with the loss-prevention office at Wal-Mart. Moy placed Lieutenant Knack of the Forest Park police department in charge of hiring off-duty police officers as security guards for Wal-Mart. Knack was hired by Wal-Mart to be a liaison with the police department, and it was Knack who hired Young. Moy knew defendant Baker, who had occasionally worked as a Wal-Mart security guard. Sergeant Weiler testified that he had also worked as a Wal-Mart security guard.

After Luss was placed in handcuffs, several Forest Park police officers arrived, including defendant Officer Baker and Officers McClintock,[7] Salas and Caines and Sergeant Weiler. By the time the officers arrived, Luss's knuckles were bleeding.[8] In response to plaintiff's interrogatories, defendant Forest Park stated that Sergeant Weiler was the watch commander and had the authority to direct the other officers. Sergeant Weiler also testified that he was the watch commander and the highest ranking officer on duty that evening.

Officer Caines testified that she patted down Luss around his waist, checked his pocket and recovered a razor blade from his pocket, as well as a glove and an identification card, which was either an Illinois state identification card or a driver's license.[9]

---

[7]Officer McClintock testified that he was the first police officer to arrive at the Wal-Mart store.

[8]Both Officers Salas and McClintock testified that Luss's knuckles were bleeding.

[9]Officer McClintock testified that Officer Caines had surgical or rubber gloves and thus

7

Sergeant Weiler testified that when he arrived at the Wal-Mart store, a couple of police cars were already there. He observed Luss yelling, moving about and trying to resist the efforts of the officers to restrain him. Officer Salas testified that Luss was "cussing and swearing *** and moving about."

Sergeant Weiler testified that he directed the other officers not to remove the first set of handcuffs due to Luss's combativeness and to secure a second set of handcuffs "to the belt area." [10] Officer Baker testified that officers placed a second pair of handcuffs on Luss.

Sergeant Weiler testified that, after Luss's arrest in front of the Wal-Mart store, he directed Officer Salas to transport Luss to the Forest Park police station and assigned Baker the task of processing Luss's arrest and preparing the paperwork. Officer Baker testified that he remained at the Wal-Mart store to speak with Wal-Mart employees Young and Struck, whom Baker knew from his prior employment at the Wal-Mart store. Baker never saw or received the item or items that Luss had allegedly taken.

---

was able to reach into Luss's pocket. McClintock did not actually see the razor blade.

[10]Officer Salas testified that after Sergeant Weiler arrived, the officers decided to place a second pair of handcuffs on Luss, because Luss kept moving around, swearing and trying to reach for his pocket. Officer McClintock testified at his deposition that the second pair of handcuffs which the officers placed on Luss belonged to McClintock and that the officers placed the second pair of handcuffs through Luss's belt or belt loop.

Sergeant Weiler testified that he followed Salas back to the station and, on the way, called for paramedics to examine Luss because Weiler had observed blood on Luss. When Weiler walked into the station, he was behind Salas and Luss,[11] and the paramedics were already there. Salas testified that Luss was "still swearing and everything." Sergeant Weiler testified that Luss was placed directly into a detention cell[12] and that Salas went into the detention cell with the paramedics. Salas testified that Luss was swearing at the paramedics, that the paramedics washed Luss's face and bandaged his hand, and that Salas locked the detention cell after the paramedics left.

Sergeant Weiler testified that he and Salas agreed that "it was a better practice" to leave the handcuffs on Luss until Baker arrived at the station, and that he (Weiler) then left the station to go back on patrol. Officer Salas testified that he had discussed with Weiler the issue of leaving Luss in the cell with his belt and that they had "pretty much c[o]me to the conclusion that it would be safer for all of us to let Luss sit there for a while and calm down."

Officer Baker testified that Luss was in the detention cell for almost two hours prior to his

---

[11]Officer Salas testified that Sergeant Weiler accompanied Salas and Luss from Salas' vehicle into the police station.

[12] In response to plaintiff's interrogatories, defendant Forest Park stated that Luss was placed directly into a detention cell. Officer Salas also testified that Luss was placed directly into a detention cell.

suicide attempt. Baker testified that during this time, he was waiting for Officer Salas to finish processing another arrest so that Salas could help Baker process Luss. Baker testified that he waited for Salas's assistance because Luss had reportedly been combative with Wal-Mart employees, Luss was bigger than Baker and he was reportedly HIV positive.

During these two hours,[13] Officer Baker was responsible for monitoring Luss in his cell. The "adult detention/observation log," initialed by Baker, stated that Luss was placed in his cell at 4:40 p.m. and that Baker checked on Luss four times, at approximately half-hour intervals. At 5 p.m., the log stated that Luss was "OK." At 5:30 and 6 p.m., the log indicated that Luss was "OK Sleeping." At 6:26 p.m., the log stated: "Found prisoner hanging in detention cell with a black belt. The belt was tied to the metal cover that covers the lights above the toilet." At his deposition, Baker confirmed the information written on the log.

At his deposition, Baker testified that when he looked through the window of the cell's door at 6:26 p.m., he saw Luss standing in front of the toilet, with his belt tied around his neck and "something hanging" from the ceiling "down to him." Baker testified that he did not use the portable radio hooked on his belt. Instead, he left the lockup area and went down the hall to the communications room. To leave the lockup area, he needed to open the door with a key. In the

---

[13]Former defendant Moy testified that Wal-Mart employees never signed a criminal complaint against Luss because Luss died before a complaint was prepared.

communications room, he asked a dispatcher to call Sergeant Weiler right away. [14] Baker then returned to the lockup area, alerted Officer Salas and obtained the keys to the detention cell. Baker testified that Sergeant Weiler arrived in less than a minute.

Officer Salas testified that, after he heard Sergeant Weiler paged, he walked down the hall, opened the door and observed Officer Baker standing in front of Luss's detention cell. Officer Salas testified that: "Officer Baker is looking in the window of the detention cell and he is banging on the window with the keys, saying, hey, hey you. He is yelling like that. And I say what is going on and that is when he tried to put the key in the door." Baker told Salas that the prisoner was hanging himself. Salas testified that he took a few steps back and yelled to the dispatch area to call the paramedics. As soon as Salas looked back toward the detention cell, Weiler was already there or entering. Weiler and Baker then opened the door and ran into the cell. Baker grabbed Luss by the ankles, and Weiler, who had a knife, started to cut the belt. Salas further testified that the cell was too small for Salas to enter, once Weiler and Baker were already inside. The paramedics arrived shortly and immediately started administering first aid.

Weiler testified that he had returned to the station to retrieve his hat and coat,[15] and he

---

[14]Officer Salas testified that while he was processing another prisoner, he heard someone calling for Sergeant Weiler "on the radio or by dispatch."

[15]Weiler testified that to retrieve his hat and coat, he had to walk past the detention cell. He testified that it was less than a minute during the time that he walked past the cell to retrieve his hat and coat, walked outside to his car, was called back to the station and returned to the

had walked out of the station with his hat and coat in his hand, when he was called back into the station. That is how he arrived at Luss's cell so fast. Weiler testified that when he arrived in front of Luss's cell, Baker had the keys in his hand and he informed Weiler that Luss had just tried to kill himself. At his deposition, Baker did not recall how many minutes elapsed between the time when he first observed Luss hanging in his cell and the time when he and Weiler entered the cell.

Weiler testified that when he entered the cell, Luss was hanging with the belt tied around his neck and the other end was tied to a fixture above him. Weiler testified that he pulled a knife out of his pocket, that he and Baker lifted Luss up, that he (Weiler) cut the belt and that he and Baker lowered Luss to the floor.

Baker testified that he and Sergeant Weiler entered the cell, grabbed Luss's midsection and legs, and lifted him up. Sergeant Weiler tried unsuccessfully with one hand to untie the belt. Then Weiler located a knife or cutting instrument which he had with him and was able to cut the belt, and the officers laid Luss on the floor of the cell.

Sergeant Weiler testified at his deposition that after Luss was laid on the floor, he removed the belt from around Luss's neck and he felt a faint pulse. At his deposition, Weiler did not recall starting CPR but stated it was possible that he had. Weiler testified that he would not have lied to the two investigators from the State Police who stated in their report that Weiler had started CPR and had observed not only a faint pulse, but also shallow breathing and saliva movement around Luss's mouth. With respect to the shallow breathing and the saliva movement,

---

detention cell.

Weiler testified at his deposition: "I don't remember that now." Weiler testified that it was only seconds between when he and Baker cut down Luss and when the paramedics arrived.

Baker also testified that the paramedics arrived shortly and began trying to revive Luss. Sergeant Weiler testified that the paramedics are located right next door to the police station. Weiler explained that to call the paramedics, someone in the communications room presses a button and makes an announcement, and then the fire department makes a broadcast over the fire department speaker. Weiler testified that he was in the booking area, right outside the detention cell, while the paramedics tried to revive Luss.

Sergeant Weiler testified that after the paramedics removed Luss from the police station, he checked the prisoner log for Luss and the last entry that Officer Baker had made was for 6 p.m. Thus, the 6:26 p.m. entry that described the hanging was written sometime later.

Lieutenant Steven Johnsen, with the Forest Park police department, testified at his deposition that he conducted an investigation concerning defendant Baker, which resulted in the police department's firing of Baker. Baker was fired for making false time cards so that it appeared that he was not working secondary employment in excess of 20 hours per week. Baker testified at his deposition that he was terminated from the Forest Park police department in August 2002.

Johnsen also testified that there was a general order in effect at the police department that prisoners were not to be placed in their cells with their belts. Also, as a result of Luss's suicide, the police department stopped using that detention cell as a detention area and started using it as an evidence room instead.

13

Nos. 1-06-0731; 1-06-2839 ( Cons.)

Procedural History

Plaintiff's third amended complaint alleged 24 counts. Plaintiff alleged separate counts of negligence, battery and false arrest against each of the Wal-Mart defendants pursuant to the "Survival Act" (755 ILCS 5/27-6 (West 2006)).[16] Plaintiff also alleged separate counts of negligence and battery against each of the Wal-Mart defendants pursuant to the Wrongful Death Act (740 ILCS 180/1 (West 2006)). Plaintiff alleged both Survival Act and wrongful death counts against both Baker and the Village of Forest Park.

On August 30, 2005, the trial court granted defendant Forest Park and Baker's motion for summary judgment with respect to all the counts against them in the third amended complaint.[17] On March 7, 2006, the trial court denied plaintiff's motion to reconsider and held that "summary judgment [is] entered in favor of Forest Park and Lucius Baker." The order granted leave to

---

[16]Although plaintiff did not provide a citation for the "survival act," this court assumes plaintiff was referring to section 27-6 of the Probate Act of 1975, which provides: "In addition to the actions which survive by the common law, the following also survive: ***, actions to recover damages for an injury to the person *** actions against officers for misfeasance, malfeasance, nonfeasance of themselves or their deputies ***." 755 ILCS 5/27-6 (West 2006) (hereinafter Survival Act).

[17]The trial court granted the motion for summary judgment for: counts XVII and XIX which were directed against defendant Forest Park; and counts XVIII and XX which were directed against defendant Lucuis Baker.

14

Nos. 1-06-0731; 1-06-2839 ( Cons.)

appeal, and on March 13, 2006, plaintiff filed a notice of appeal.

On May 2, 2005, the trial court granted defendant Wal-Mart's motion for summary judgment on counts IX through XVI, which were based on the Wrongful Death Act (740 ILCS 180/1 (West 2006)), and ordered defendant Wal-Mart to answer or otherwise plead to Counts I through VIII[18] and counts XXI and XXII of plaintiff's third amended complaint. [19] On July 1, 2005, defendant Wal-Mart moved to dismiss the remaining counts pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2006)) on the grounds that: (1) by dismissing the wrongful death counts, the trial court implicitly found that Wal-Mart was not responsible for Luss's suicide; and (2) plaintiff's allegations of false arrest are untimely. On October 25, 2005, the trial court found in relevant part:

"1. Defendant's motion to dismiss the wrongful death allegations of plaintiff's Survivial Act claims is granted;

2. Defendant's motion to dismiss the false arrest claims [counts XXI through XXIV] are denied;

3. Plaintiff is granted 28 days to file a fourth amended complaint alleging Survival Act claims based on negligence, battery

---

[18]In its appellate brief, defendant Wal-Mart stated that the trial court "did not address" counts V through VIII in its May 2d order. That statement is factually incorrect.

[19]The May 2 order made no reference to counts XXIII and XXIV of plaintiff's third amended complaint, which alleged false arrest claims against defendants Mart Moy and John Doe.

15

and false arrest but withdrawing language alleging that such conduct led to death. This issue is preserved for appeal, and plaintiff does not waive this issue."

On November 21, 2005, plaintiff filed a fourth amended complaint which dropped all wrongful death claims against the Wal-Mart defendants and all claims against defendants Forest Park and Baker. Defendant Wal-Mart subsequently filed a second motion for summary judgment which was not included in the record on appeal.[20]

An order entered on April 7, 2006, stated that the trial court granted the Wal-Mart defendants' second motion for summary judgment because "no one appeared for the plaintiff." The order stated that "[t]his disposes of the case in its entirety." On September 13, 2006, the trial court issued an order clarifying that the April 7 order was "not granted because Plaintiff's attorney failed to appear" but on the court's reading of the briefs. The order also granted leave to appeal, and on September 20, 2006, plaintiff filed a notice of appeal from the September 13 order.

Defendant Wal-Mart then moved to dismiss defendant Martin Moy from this appeal on the ground that he had never been served and no appearance had ever been filed on his behalf. On July 19, 2007, this court granted defendant Wal-Mart's motion and dismissed defendant Martin Moy from this appeal. This appeal then proceeded with respect to defendants Village of Forest Park, Officer Lucius Baker and Wal-Mart Stores, Inc.

---

[20]In its appellate brief, defendant Wal-Mart stated that it subsequently filed a motion for summary judgment, which was not part of the appellate record.

ANALYSIS

Preliminary Procedural Issues

Before we can analyze this appeal on its merits, we must address several preliminary procedural issues. First, defendants Forest Park and Baker claim that plaintiff abandoned her claims against them, when she filed a fourth amended complaint which did not contain any counts against them. Plaintiff filed a fourth amended complaint on November 21, 2005, after the trial court granted the summary judgment motion of defendants Forest Park and Baker.

"Normally, a party filing an amended pleading waives any objection to the trial court's ruling on former complaints." Zekman v. Direct American Markters, Inc., 182 Ill. 2d 359, 368 (1998). However, this "waiver rule is an admonition to the litigants, not a limitation on the jurisdiction of the reviewing court." Zekman, 182 Ill. 2d at 368. The purpose of the waiver rule is to prevent surprise at trial for both the trial court and the defendants, who would be "disadvantaged" if plaintiff were allowed "to proceed to trial on different issues contained in separate complaints." Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp., 96 Ill. 2d 150, 154 (1983).

In the case at bar, it is hard to see how the Forest Park defendants suffered any surprise or disadvantage; nor do they claim to have suffered any. The trial court granted their summary judgment motions on August 30, 2005, and denied plaintiff's motion to reconsider on March 7, 2006. The March 7 order granted plaintiff leave to appeal; and plaintiff filed a notice of appeal on March 13, 2006.

What was true in Zekman is equally true in this case: "The ability to bring an appeal from

17

two separate complaints based on the same cause of action was neither raised nor briefed in this court." Zekman, 182 Ill. 2d at 368. As the Illinois Supreme Court did in Zekman, we also "make no finding regarding its propriety at this time and address [the counts of the prior complaint] on their merits." Zekman, 182 Ill. 2d at 368.

In addition, the trial court's order of October 25, 2005, granted plaintiff leave to file a fourth amended complaint alleging counts "based on negligence, battery and false arrest but withdrawing language alleging that such conduct led to death." Thus, it appears that the trial court required the plaintiff to remove the counts decided by summary judgment from her fourth amended complaint.

Second, defendants Forest Park and Baker claim that the standard of review is "arguably" abuse of discretion because plaintiff, in her notice of appeal, appealed only the trial court's order of March 7, 2006, denying plaintiff's motion for reconsideration, and not the order of August 30, 2005, granting defendants Forest Park and Baker's motion for summary judgment. The standard of review is abuse of discretion for a trial court's denial of a motion to reconsider, and de novo for a trial court's grant of a motion for summary judgment. Avenaim v. Lubecke, 347 Ill. App. 3d 855, 861 (2004) (motion to reconsider); Murray v. Chicago Youth Center, 224 Ill. 2d 213, 228 (2007) (summary judgment motion).

The March 7 order, which denied plaintiff's motion for reconsideration, also stated "summary judgment entered in favor of Forest Park and Lucius Baker." Plaintiff's notice of appeal, filed March 13, 2006, stated: "This is an appeal from the March 7, 2006 Order Denying the Plaintiff's Motion to Reconsider Prior Ruling, wherein the Motion Judge granted Summary

18

Nos. 1-06-0731; 1-06-2839 ( Cons.)

Judgment to Defendants Village of Forest Park and Officer Lucius Baker." This court will treat the appeal as an appeal from a denial of summary judgment and apply a de novo standard of review.

Third, plaintiff's appellate brief fails to cite any legal authority for most or almost all of its claims. "A point raised in a brief but not supported by citation to relevant authority *** is therefore forfeited." People v. Ward, 215 Ill. 2d 317, 332 (2005); Rosier v. Cascade Mountain, Inc., 367 Ill. App. 3d 559, 568 (2006) (this court held that, by failing to offer any supporting legal authority or reasoning, plaintiffs waived consideration of their theory for asserting personal jurisdiction over defendants); Ferguson v. Bill Berger Associates, Inc., 302 Ill. App. 3d 61, (1998) ("it is not necessary to decide this question since the defendant has waived the issue" by failing to offer case citation or other support as 210 Ill. 2d R. 341 requires); Supreme Court Rule 341(h)(7) (argument in appellate brief must be supported by citation). This court could find for defendants on this ground alone. However, this court will also review plaintiff's claims on their merits.

Fourth, plaintiff failed to include in the record Wal-Mart's second summary judgment motion, granted by the trial court on April 7, 2006. "The law is well settled that appellants bear the duty to 'present a record *** which fairly and fully presents all matters necessary and material for a decision of the question raised.' [Citation.]" Smolinski v. Vojta, 363 Ill. App. 3d 752, 757 (2006); Webster v. Hartman, 195 Ill. 2d 426, 432 (2001). "However, even if the record on appeal is incomplete, courts have held that appellate review is not precluded where the record contains that which is necessary to dispose of the issues in the case." In re Marriage of Ward, 282 Ill.

19

Nos. 1-06-0731; 1-06-2839 ( Cons.)

App. 3d 423, 430 (1996). "[W]hen the record on appeal is incomplete, a reviewing court should actually 'indulge in every reasonable presumption favorable to the judgment ***.' [Citation.]" Smolinski, 363 Ill. App. 3d at 757-58. In the case at bar, the record is sufficient for this court to dispose of the issues.

<u>Standard of Review</u>

Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Murray, 224 Ill. 2d at 228. The Illinois Supreme Court has held that "[i]t is a drastic means of disposing of litigation, and this court has a duty to construe the record strictly against the movant and liberally in favor of the nonmoving party." Murray, 224 Ill. 2d at 245-46. "Summary judgment should not be allowed unless the moving party's right to judgment is clear from doubt, because plaintiffs are not required to prove their cases at the summary judgment stage." Murray, 224 Ill. 2d at 246.

Defendants Forest Park and Baker moved for summary judgment solely on the basis that they were immune from liability pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1 101 et seq. (West 2006)). Thus, the trial court's grant of summary judgment in favor of defendants Forest Park and Baker required interpretation of a statute. In addition, defendant Wal-Mart moved for summary judgment relying in part on the shopkeeper's privilege codified in the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/16A-5) (West 2006)). "The proper construction of a statute is a question of law, subject to de novo

20

review." <u>Murray</u>, 224 Ill. 2d at 228.

<u>Wrongful Death Counts Against Wal-Mart Defendants</u>

Plaintiff did not appeal from the trial court's grant of defendant Wal-Mart's motion for summary judgment on the wrongful death counts. On May 2, 2005, the trial court granted defendant Wal-Mart's motion for summary judgment on counts IX through XVI, the wrongful death counts of plaintiff's third amended complaint. An order entered on April 7, 2006, granted summary judgment in favor of Wal-Mart on the remaining counts. On September 13, 2006, the trial court clarified the April 7 order stating that it was granted not because of a failure of plaintiff's counsel to appear but on the court's reading of the briefs. On September 20, 2006, plaintiff filed a notice of appeal only from the September 13 order, but not from the May 2 order, which had granted summary judgment on the wrongful death counts. Thus, the wrongful death counts are not technically part of this appeal.

However, both plaintiff and defendant Wal-Mart briefed this issue on appeal, and an order dated October 25, 2005, stated that this issue is preserved for appeal. Even assuming this issue is appropriately before us on appeal, we must find that the trial court correctly granted summary judgment in favor of defendant Wal-Mart on the wrongful death counts.

" 'It is well established under Illinois law that a plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee.' " <u>Crumpton v. Walgreen Co.</u>, 375 Ill. App. 3d 73, 79, 871 N.E.2d 905, 910 (2007), quoting <u>Chalhoub v. Dixon</u>, 338 Ill. App. 3d 535, 539-40 (2003). However, an exception to this general rule exists when the defendant's conduct caused an injury,

such as a head injury, which made the decedent so " ' bereft of reason' " as to cause him to attempt suicide. <u>Crumpton</u>, 375 Ill. App. 3d at 80, quoting <u>Stasiof v. Chicago Hoist & Body Co</u>., 50 Ill. App. 2d 115, 122 (1964), <u>aff'd sub nom</u>. <u>Little v. Chicago Hoist & Body Co.</u>, 32 Ill. 2d 156 (1965).

In the case at bar, there were no allegations of a head injury. Luss's injuries were limited to bleeding knuckles and mace in his eyes, for which he received prompt medical attention at the police station. Plaintiff's appellate brief failed to cite a single case supporting her claim that the actions of Wal-Mart employees led to Luss's suicide, and failed to offer any factual explanation of how the actions of Wal-Mart employees could have caused Luss to become so bereft of reason as to commit suicide. Thus, even viewing the record in the light most favorable to the plaintiff, this court finds that defendant Wal-Mart was entitled to judgment on the wrongful death counts as a matter of law.

Battery and False Arrest Counts Against Defendant Wal-Mart

Plaintiff alleged counts of battery and false arrest[21] against defendant Wal-Mart. Battery is the unauthorized touching of another person. <u>In re Estate of Allen</u>, 365 Ill. App. 3d 378, 385 (2006). False arrest is the restraint of a person without reasonable grounds to believe that the

---

[21] Counts II, IV, VI and VIII alleged battery by, respectively, defendants Wal-Mart Stores East, Inc., Wal-Mart Stores, Martin Moy and John Doe. Counts XXI through XXIV alleged false arrest by the same defendants. The numbering of the counts is the same in both the third and fourth amended complaints.

person committed an offense. <u>Ross v. Mauro Chevrolet</u>, 369 Ill. App. 3d 794, 798 (2006).

The depositions of Wal-Mart's own employees establish both the touching required for a battery and the restraint required for false arrest. Their multiple depositions are in complete agreement on the following facts: that Wal-Mart employees wrestled Luss to the ground; that a Wal-Mart employee sprayed Luss with mace; that Wal-Mart employees handcuffed him and physically restrained him; and that, as a result of their actions, Luss's hands were bleeding. Their depositions leave no factual dispute about the existence of both their touching and their restraint of Luss.

Thus, the issue with respect to battery is whether the touching was somehow authorized and the issue with respect to false arrest is whether the restraint was supported by reasonable grounds to believe that an offense was committed. As an affirmative defense to both the battery and false arrest counts, defendant Wal-Mart assert the shopkeeper's privilege contained in the Criminal Code (720 ILCS 5/16A-5 (West 2006)). <u>Toothman v. Hardee's Food Systems, Inc.</u>, 304 Ill. App. 3d 521, 524 (1999) (store asserted shopkeeper's privilege as an affirmative defense to claims of battery, assault and false imprisonment).

The shopkeeper's privilege states in relevant part:

> "Any merchant who has reasonable grounds to believe that
> a person has committed retail theft may detain such person, on or
> off the premises of a retail mercantile establishment, in a reasonable
> manner and for a reasonable length of time for all or any of the
> following purposes:

23

* * *

       (c) To make reasonable inquiry as to whether such person has in his

possession unpurchased merchandise and, to make reasonable investigation

of the ownership of such merchandise;

       (d) To inform a peace officer of the detention of the person

and surrender that person to the custody of a peace officer ．"  720

ILCS 5/16A-5 (West 2006).

Thus, to assert the shopkeeper's privilege, defendant Wal-Mart must have had "reasonable

grounds to believe that a person [had] committed retail theft" (720 ILCS 5/16A-5 (West 2006)).

      The record leaves no triable issue of fact that Wal-Mart employees had "reasonable

grounds to believe" that Luss had committed retail theft.  The only person who saw Luss leaving

the store with merchandise and without a receipt was Young, the security guard, who is now dead

and who was never deposed.  However, Eric Struck, who was co-manager of the Wal-Mart store

testified at his deposition that when he ran outside toward Young and Luss,  he heard Young state

that what Luss stole was inside the store.

      Young's statement is not barred by the rule against hearsay because it is not being

admitted for the truth of the matter asserted, but to show that at the time of the incident, Wal-

Mart employees had "reasonable grounds to believe" that Luss had committed retail theft (720

ILCS 5/16A-5 (West 2006)).  The rule against hearsay generally prevents the introduction at trial

of out-of-court statements offered to prove the truth of the matter asserted.  People v. Evans, 373

Ill. App. 3d 948, 964 (2007).  Thus, a statement offered for some reason other than "the truth of

the matter asserted" does not violate the rule. Evans, 373 Ill. App. 3d at 964. "For example, if a statement is offered to prove its effect on the listener's state of mind, or to show why the listener acted as he did, it is not hearsay." Evans, 373 Ill. App. 3d at 964. In the case at bar, Young's statement about Luss's retail theft is offered to prove its effect on the state of mind of other Wal-Mart employees and to show why they acted the way they did. Thus, it is not barred by the hearsay rule.

Thus, this court finds that the trial court did not err in granting summary judgment in favor of defendant Wal-Mart with respect to the battery and false arrest counts.

Negligence Counts Against Defendant Wal-Mart

In the negligence counts[22] against defendant Wal-Mart, plaintiff asserted claims of negligent hiring, training and supervision of the Wal-Mart employees who touched and restrained Luss. The depositions established that these employees included: Reginald Young, the now-deceased security guard who initially stopped Luss; Brandon Hunter, a Wal-Mart assistant manager, who struggled with Luss on the pavement; Ed Smith, the co-manager of the Wal-Mart store who forced open Luss's hand to retrieve the mace cannister; and Eric Struck, a Wal-Mart loss-prevention employee, who forced Luss to the ground and handcuffed him. The negligence counts also reasserted the battery and false arrest claims, which were already discussed above.

To state a cause of action for negligent hiring or retention, a plaintiff must allege that the

---

[22]Counts I, III, V and VII alleged negligence by, respectively, defendants Wal-Mart Stores East, Inc., Wal-Mart Stores, Martin Moy and John Doe.

employer knew or should have known that the employee was unfit for the job and that the employee's unfitness created a foreseeable danger to others. MacDonald v. Hinton, 361 Ill. App. 3d 378, 387 (2005). A plaintiff can maintain an action for negligent hiring or retention, even when the employee committed a criminal or intentional act, if the employee was on the employer's premises or using the employer's chattel and if the employer had reason to know of the need to exercise control over the employee. MacDonald v. Hinton, 361 Ill. App. 3d at 387. Since the Wal-Mart employees were all on Wal-Mart premises when they touched or restrained Luss, the issue becomes knowledge: whether the Wal-Mart defendants knew or should have known of the employees' alleged unfitness and whether they should have been able to foresee the danger which the employees' alleged unfitness posed to others.

Plaintiff failed to allege in its complaint or state in its appellate brief[23] any facts that established that defendant Wal-Mart knew or should have known that Young, Hunter, Smith or Struck was unfit for the respective jobs of security guard, assistant manager, co-manager and loss-prevention employee. Plaintiff also failed to allege in its complaint or in its appellate brief any

---

[23]We refer only to plaintiff's complaint and appellate brief because the appellate record does not contain plaintiff's response to the summary judgment motion granted by the trial court on April 7, 2006. Plaintiff filed a fourth amended complaint on November 21, 2005. Defendant Wal-Mart stated in its appellate brief that, after the filing of the fourth amended complaint, it filed a summary judgment motion that was not included in the appellate record. The trial court granted this motion on April 7, 2006.

facts which established that any of these employees posed a foreseeable danger. The record contains no evidence of prior batteries or false arrests by Young, Hunter, Smith or Struck. Viewing the record in the light most favorable to the plaintiff, this court finds that the trial court properly granted summary judgment in favor of defendant Wal-Mart for the negligence counts.

Counts Against Defendants Forest Park and Officer Baker

Plaintiff alleged four counts against defendants Forest Park and Officer Baker.[24] Two counts were for wrongful death, one against each defendant; and two counts were pursuant to the Survival Act. The counts concern two different actions and time frames: (1) police conduct at the station prior to the hanging that could have prevented Luss's suicide and (2) police conduct after Luss was discovered hanging in his cell.[25]

First, with respect to defendants' conduct prior to the suicide, plaintiff claims that defendants violated their own internal standards and guidelines by placing Luss in the detention

---

[24]Counts XVII through XX of plaintiff's third amended complaint were directed at defendants Forest Park and Officer Baker.

[25]Plaintiff does not allege false arrest or battery claims in her complaint against defendant Forest Park or Officer Baker, or any wrongful conduct by the police in connection with Luss's injuries at the Wal-Mart store. The deposition testimony is in complete agreement that Luss was maced and handcuffed with bloody knuckles before the police ever arrived on the scene. The police merely added a second set of handcuffs and transported Luss to the station, where he received prompt medical attention by paramedics for his injuries.

cell with his belt.   It is well established that violation of self-imposed rules or internal guidelines " 'does not normally impose a legal duty, let alone constitute evidence of negligence, or beyond that, wilful and wanton conduct.' "  Wade v. City of Chicago, 364 Ill. App. 3d 773, 781 (2006), quoting Morton v. City of Chicago, 286 Ill. App. 3d 444, 454 (1997).

In addition, as noted earlier,  " ' plaintiff may not recover for a decedent's suicide following a tortious act because suicide is an independent intervening event that the tortfeasor cannot be expected to foresee.' [Citation]."  Crumpton, 375 Ill. App. 3d at 79.   This court has stated that "laypeople cannot be reasonably expected to anticipate the mental health consequences of their acts or omissions."  Chalhoub v. Dixon, 338 Ill. App. 3d 535, 539 (2003) (stepfather was not liable for his alleged negligence in storing firearm because he could not reasonably have been expected to foresee son's suicide).  Even if we were to impose such a duty to foresee on the police, plaintiff has not alleged any facts from which the police could have been reasonably expected to foresee Luss's suicide.

Second, with respect to police conduct after the hanging, the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 et seq. (West 2006) (Tort Immunity Act) governs the question of liability.  In their summary judgment motion and in their brief to this court, defendants Forest Park and Baker relied solely on the immunity provided to them by the Tort Immunity Act.  The act provides that neither a local public entity such as defendant Forest Park nor a public employee such as defendant Baker are liable for injuries proximately caused by the failure to furnish or obtain medical care for a prisoner (745 ILCS 10/4-105 (West 2006)).  There is no dispute that the Village of Forest Park and Officer Baker qualify

28

as "a local public entity" and "a public employee," respectively, within the meaning of the Tort Immunity Act (745 ILCS 10/4-105 (West 2006)).

However, the immunity does not apply when the employee knows from his "observation of conditions that the prisoner is in need of immediate medical care and, through willful and, wanton conduct, fails to take reasonable action to summon medical care" (720 ILCS 10/4-105 (West 2006)). The Tort Immunity Act defines "willful and wanton conduct" as including "a course of action which shows *** an utter indifference or conscious disregard for the safety of others" (745 ILCS 10/1-210 (West 2006)).

The plaintiff has the burden of proving that the defendant's conduct was willful and wanton. Wade v. City of Chicago, 364 Ill. App. 3d 773, 780 (2006); Urban v. Village of Lincolnshire, 272 Ill. App. 3d 1087, 1094 (1995). "Although the question of whether an action amounts to willful and wanton conduct is normally a question of fact for the jury, a court may make a determination of that issue if the evidence, when viewed in the light most favorable to the opponent, overwhelmingly favors the movant and no contrary determination based on the evidence could ever stand." Wade, 364 Ill. App. 3d at 781.

Officer Baker's deposition testimony established that he chose to leave Luss hanging in his cell for at least a short period of time. Baker testified that he chose not to use the portable radio attached to his belt to call for help and chose instead to leave the lock-up area, which required using a key, to run to the communications area, to notify a dispatcher there to page his supervisor, and to run back.

Officer Salas testified that, after hearing the page for Sergeant Weiler, he observed Officer

29

Baker simply "looking in the window of the detention cell" and "banging on the window with the keys, saying, hey, hey you." [26] Officer Salas testified that only after Salas asked Baker "what is going on" did Baker try to put the key in the cell door.

In order for Officer Baker's conduct to qualify as a "conscious disregard" for Luss's "safety," Luss must have been still alive and there must have been a chance of saving him; otherwise Luss's safety cannot possibly be at issue.  See (745 ILCS 10/1-210 (West 2006).   A report by State Police officers stated that Sergeant Weiler had informed them that, immediately after he and Officer Baker entered Luss's cell,  he had detected a faint pulse, shallow breathing and saliva movement around Luss's mouth, and he had started CPR.  At his deposition, Weiler stated that he could recall detecting a faint pulse but could no longer recall whether he started CPR or observed shallow breathing and saliva movement.[27]

Plaintiff, who bears the burden of proof, failed to introduce any expert medical testimony or affidavits concerning whether Luss could still have been alive when Baker first observed him hanging and whether the time delay created by Baker's conduct had any effect on an attempt to save Luss's life.

In addition, to prevail on a claim of willful and wanton conduct, plaintiff must prove that

---

[26]Officer Baker testified that he grabbed the keys <u>after</u> he told Officer Salas that the prisoner hanged himself.

[27]In addition, an Illinois State Police report dated February 4, 2002, indicated that Luss had a faint pulse when he arrived at Oak Park Hospital.

defendant's willful and wanton conduct was a proximate cause of plaintiff's injury. Wade, 364 Ill. App. 3d at 780; Urban, 272 Ill. App. 3d at 1094. Again, plaintiff's failure to provide any expert medical testimony or affidavits concerning Luss's potential viability leave the record bereft of evidence of proximate cause. Viewing the record in the light most favorable to the plaintiff, this court finds that the trial court did not err in granting summary judgment in favor of defendants Forest Park and Officer Baker.

                              CONCLUSION

For the foregoing reasons, we affirm.

Affirmed.

WOLFSON and GARCIA, JJ., concur.