NOTICE
Decision filed 10/30/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240729-U

NO. 5-24-0729

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| NANCY GABRIEL, Administrator of the Estate of James Gabriel, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19-L-1268 |
| ALTON MEMORIAL HOSPITAL d/b/a ALTON MEMORIAL HOSPITAL AMBULANCE SERVICE, | ) ) ) ) | |
| Defendant-Appellee, | ) ) | |
| and | ) ) | |
| UNIVERSITY CARE CENTER, | ) ) | Honorable Christopher P. Threlkeld, |
| Defendant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*:   When the record was absent an issue of material fact to support any allegation that the conduct of the defendant's agents was willful and wanton, the trial court did not err in granting the defendant's motion for summary judgment.

¶ 2   Nancy Gabriel, as Administrator of the Estate of James Gabriel, filed a wrongful death and survival action against Alton Memorial Hospital on September 4, 2019, alleging that the decedent sustained bodily injuries during his February 2, 2019, ambulance transport from a hospital to a

1

nursing home, when the gurney he was strapped into tipped over and he landed on ground adjacent to the sidewalk. James Gabriel (James) died on March 23, 2019. There is nothing in the record regarding his cause of death. Nancy Gabriel (Nancy) alleged that the ambulance crew failed "to use a reasonable degree of care and caution" and lost control of the gurney, which resulted in James's fall. After discovery, Alton Memorial Hospital d/b/a Alton Memorial Hospital Ambulance Service (Alton Memorial) filed an initial and a second motion for summary judgment arguing that Nancy presented no evidence that the ambulance crew committed willful and wanton conduct; therefore, Alton Memorial was entitled to summary judgment based on immunity pursuant to the Illinois Emergency Medical Services (EMS) Systems Act (the EMS Systems Act) (210 ILCS 50/3.150(a) (West 2018)). The trial court granted summary judgment in favor of Alton Memorial on Nancy's negligence claims on September 9, 2022 (the first summary judgment motion) and on Nancy's willful and wanton claims on March 15, 2024 (the second summary judgment motion). On May 22, 2024, the trial court denied Nancy's motion to vacate and made a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) to allow this appeal. For the reasons following, we affirm.

¶ 3                                I. BACKGROUND

¶ 4      This case began on February 2, 2019, when James was discharged from St. Anthony's Hospital in Alton to be transferred to an Edwardsville nursing facility for rehabilitation services. On that date, James was five feet, ten inches in height and weighed approximately 330 pounds. Alton Memorial dispatched a two-person ambulance crew for the transport—Harold Brooks (Brooks), a paramedic, and McKinley Bell (Bell), an emergency medical technician (EMT). Employees of St. Anthony's Hospital assisted the ambulance crew in transferring James from his hospital bed onto a wheeled gurney. The crew then secured James with five straps: one over his

2

ankles/mid-calves; one above his knees; one at his waist; and one strap over each of his shoulders that connected to a center strap. Once James was secured, the crew raised the gurney's side rails to prevent him from shifting within the gurney and loaded him into the ambulance without any issues. Brooks drove the ambulance, while Bell was positioned next to James, and the ride to the nursing facility was uneventful. Upon arrival at the nursing facility, Brooks parked the ambulance in a parking lot near a sidewalk that led to the ambulance entrance. This was the facility's side entrance, which was intended for use by those arriving by ambulance. The nursing facility also had a front entrance used by patients and visitors. Brooks and Bell both gave deposition testimony that they had been instructed to only use the ambulance entrance when transporting patients into the nursing facility.

¶ 5     A concrete sidewalk at the nursing facility was recently repaired before James's transport. Brooks testified that he had not been to the nursing facility since the sidewalk repair was completed. Bell testified that he did not remember if he had used the repaired sidewalk within the month before they transported James.

¶ 6     Upon arrival at the nursing facility, Brooks and Bell removed James from the ambulance and lowered the gurney to approximately four feet off the ground for stability. They positioned the gurney so that James was heading feet-first toward the entrance. Brooks was at the front of the gurney next to James's feet, and was pulling the gurney forward, while Bell was pushing from behind. Both men held onto the gurney's metal bars while moving towards the entrance.

¶ 7     The sidewalk leading to the ambulance entrance of the nursing facility had a right-hand turn. As Brooks and Bell approached the turn, they slowed down. As they began the turn, Bell saw that James had shifted his body, which tilted the gurney to the left. Bell attempted to balance the gurney and called out to Brooks for assistance. In Bell's deposition, he testified that James was

3

"such a heavy guy, I can't do it by myself." Brooks started to turn around, and "felt the [gurney's] bar twist in [his] hand." Brooks and Bell held onto the bars in a futile attempt to prevent the gurney from falling over, though they were successful in decreasing the speed of the fall.

¶ 8    James fell face down onto the ground but avoided striking the concrete. He remained strapped into the gurney, and with effort, Brooks and Bell were slowly able to get the gurney back into an upright position. Following his fall, the nursing facility refused to accept James, and Brooks and Bell transported him back to St. Anthony's Hospital. James sustained a laceration above his left eye from the fall.

¶ 9    On March 23, 2019, James died. Nancy alleged that James "fractured his vertebrae" in the fall, and then "became sick and lame" which resulted in his death. We note that the record contains no medical evidence to support Nancy's claims that James suffered a fractured vertebra; that the alleged fractured vertebra was caused by the fall from the gurney; and/or that James's death was causally related to the fall.

¶ 10    Nancy filed a wrongful death and survival action against Alton Memorial on September 4, 2019. The complaint alleged that the ambulance workers failed "to use a reasonable degree of care and caution" and "lost *** control of *** [James] and the gurney," which resulted in his fall. As Nancy only alleged negligence in her complaint, Alton Memorial filed a motion to dismiss the complaint because the EMS Systems Act provided partial immunity for negligent acts or omissions. Alton Memorial argued that because Nancy failed to allege that the ambulance workers' conduct was willful and wanton, Alton Memorial could not be held vicariously liable for their conduct. The trial court reserved ruling on the motion to dismiss to allow Nancy to depose Brooks and Bell and a nursing home representative. Thereafter, Nancy named the Edwardsville nursing

4

home, University Care Center, as a respondent in discovery. In addition to the exchange of written discovery between the parties, both Brooks and Bell were deposed.

¶ 11    Brooks testified that he had been an EMT for over 30 years. An ambulance crew transferring a patient consists of two people. He explained that the two-person crew may receive additional assistance when transferring a patient from a hospital bed onto a gurney, but once the patient is on the gurney, the crew consists of only the two workers. Brooks also explained the functionality and limits of the straps on the gurney. The straps cannot be too tight, or they could be construed as a restraint, which can only be ordered by a physician. Therefore, the straps are not completely tight, and the patient has some mobility. The gurney's elevated side rails are intended to provide stability and to "keep the patient from moving within the confines of the *** [gurney]."

¶ 12    Brooks testified specifically about his history of transporting patients to University Care Center. He stated that he had been specifically instructed not to use the front entrance, because bringing a patient through the front would require transport through the dining room area, which was not allowed. Accordingly, on the date of the incident, Brooks said that he and Bell took the usual path down the sidewalk to the ambulance entrance.

¶ 13    Brooks stated that he was pulling James's gurney, and that James's fall occurred as they were making the turn on the sidewalk. He stated that he heard Bell say either "he's moving" or "he's sliding." When Brooks turned around to face the gurney, its metal bar twisted in his hand and "the cot went over." Brooks opined that when James shifted his body weight, one of the gurney's wheels veered off the sidewalk which caused the gurney to "[flip] over." He testified that the sidewalk was slightly elevated above the ground and if a wheel dropped off the sidewalk, the gurney would flip over. He added that the "flip" was partly caused by the combined weight of James and the gurney. When asked to identify a photograph of a cracked piece of concrete at the

5

turn towards the ambulance entrance, Brooks firmly denied that the concrete was broken at the time of James's accident.

¶ 14    In his testimony, Bell confirmed that ambulance transfers only involve two people. He testified that the gurney used to transport James is designed to handle patients up to 700 pounds. Bell stated that he had transferred heavier patients than James without difficulty, and so he and Brooks did not believe that they would have any issues in this transport. Bell testified that James was "unable of maintain his positioning" on the gurney during the ambulance ride, noting that every time the ambulance turned, his body shifted. When James shifted, Bell repositioned him. Bell testified that tightening the straps or using cushions or wedges around his body would not have helped.

¶ 15    Bell testified that the sidewalk up to the ambulance entrance at the nursing facility was "sketchy," and constituted a hazard because the sidewalk was uneven, made of different materials and sloped to the right at a sharp angle. He stated that the gurney tipped when they were making the turn. At that time, Bell noticed that James was tilting to the left, and he attempted to balance the gurney himself, and then called for Brooks's assistance. However, the two working together could only slow, but not stop, the fall. Bell was not asked about the broken concrete on the sidewalk. Overall, Bell testified that the gurney tipped over because James shifted his weight when they were making the sidewalk turn, which caused the gurney's wheels to leave the sidewalk.

¶ 16    In October 2020 Nancy amended her complaint and added University Care Center, the Edwardsville nursing home, as a defendant, alleging that it failed to properly design and maintain the sidewalk and as a direct and proximate result of this failure, the gurney left the sidewalk culminating in James's fall. Nancy did not amend her claims against Alton Memorial to add allegations of willful and wanton misconduct. Ultimately, Nancy severed her claim against

University Care Center. In that separate case, an individual who oversaw accounting at that nursing home, Matt Furgerson, was deposed. Furgerson testified that University Care Center contracted out maintenance projects like sidewalk repair. However, he was not able to determine which vendor constructed and/or repaired the sidewalk section at issue.

¶ 17 On April 13, 2022, Nancy filed her Third Amended Complaint alleging for the first time that the Alton Memorial Hospital ambulance crew acted in a willful and/or reckless manner by (1) failing to securely strap James to the gurney; (2) failing to maintain physical control of the gurney; (3) failing "to avoid traversing a known, obvious and easily avoidable hazard that included broken concrete"; (4) failing to demand an alternative access point into University Care Center; (5) failing to train its employees; and (6) failing to enforce appropriate protocols for patient transportation.

¶ 18 On May 18, 2022, Alton Memorial filed a motion for summary judgment, arguing that after more than two years of discovery, Nancy failed to establish evidence that the ambulance crew engaged in willful and wanton conduct. Citing to medical records and the testimony of Brooks and Bell, Alton Memorial argued that the evidence established that the crew did its best to prevent the fall. Nancy responded that summary judgment was premature and that she needed additional time for discovery and procurement of expert testimony.

¶ 19 On September 9, 2022, the trial court held a hearing on the summary judgment motion, at which Nancy's counsel again sought additional time for discovery, stating that "the material facts are not known yet, and they won't be known until we get a meaningful discovery order and scheduling order" in place. The trial court granted summary judgment for Alton Memorial on Nancy's negligence counts, but not on the willful and wanton misconduct counts. In support, the court stated: "Although the age of the case may warrant summary judgment in favor of [Alton

7

Memorial], [Nancy] has been unable to obtain discovery" from University Care Center through no fault of her own. The trial court then indicated that a case management order was appropriate, setting discovery deadlines and asked the parties to confer. Nancy did not confer with the defendants, and no proposed scheduling orders were submitted.

¶ 20    Nancy's attorney deposed Susan Howerton, University Care Center's former staff nurse, who was on duty when James fell. Howerton testified that no nursing home employee witnessed the fall. After James had fallen, some of the staff went outside to observe the ambulance crew re-right the gurney. Howerton testified that she decided that James could not then be admitted to University Care Center. She also said that she had no knowledge of the sidewalk's condition, as she had no reason to enter the facility through the ambulance entrance. Howerton confirmed that University Care Center did not want ambulance traffic though the front door and directed such traffic to the ambulance entrance. She testified that she had no reason to believe that the ambulance crew intentionally caused James to fall.

¶ 21    On October 16, 2023, Alton Memorial Hospital filed its second summary judgment motion, stating that despite lengthy discovery, including depositions of University Care Center representatives, Nancy had failed to produce any evidence of willful and wanton misconduct by Alton Memorial's ambulance crew. Nancy filed no response to this motion.

¶ 22    The trial court held a hearing on the second summary judgment motion on January 2, 2024. Nancy's attorney informed the court that she would stand on the same arguments she made 18 months before when Alton Memorial filed its first summary judgment motion. She acknowledged that facts about the fall were essentially undisputed because there were no eyewitnesses, except Brooks and Bell, and there was no video footage of the incident. Nancy argued that it was Alton Memorial's burden to produce expert testimony on the applicable standard of care. In response,

8

Alton Memorial argued that after being provided with the applicable statutory provisions and all hospital policies that would address the applicable standard of care, Nancy failed to allege that the ambulance crew violated any of the policies.

¶ 23    On March 15, 2024, the trial court granted Alton Memorial's second summary judgment motion, dismissing Nancy's remaining willful and wanton counts. Thereafter, Nancy asked the court to vacate its order or alternatively enter a finding pursuant to Illinois Supreme Court Rule 304(a) (eff Mar. 8, 2016) so that the order could be immediately appealed. On May 22, 2024, the trial court denied Nancy's motion to vacate and found that the case of *Prowell v. Loretto Hospital*, 339 Ill. App. 3d 817 (2003), relied upon by Nancy was factually distinguishable. Nancy's request for a Rule 304(a) finding was granted.

¶ 24                                      II. ANALYSIS

¶ 25    "Appellate review of a trial court's grant of summary judgment is *de novo*," and reversal will occur only if a genuine issue of material fact is found to exist. *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1027 (2005). Summary judgment should be granted if the pleadings, depositions, and admissions on file, together with any affidavits, establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). The trial court strictly construes the pleadings, depositions, admissions, and affidavits against the movant and liberally in favor of the nonmoving party in determining whether a genuine issue of material fact exists. *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 31. "The nonmoving party may defeat a claim for summary judgment by demonstrating that a question of material fact exists." *Id.*

¶ 26    Alton Memorial can only be held liable for damages in this case pursuant to section 3.150(a) of the EMS Systems Act, which provides: "Any person, agency or governmental body

9

certified, licensed or authorized pursuant to this Act *** who in good faith provides emergency or non-emergency medical services *** in the normal course of conducting their duties *** shall not be civilly liable as a result of their acts or omissions in providing such services unless such acts or omissions *** constitute willful and wanton misconduct." 210 ILCS 50/3.150(a). Nancy does not challenge the immunity provisions of the EMS Systems Act. As immunity from civil liability extends to ambulance crews in nonemergency medical transfers, and as there is no question that James's transfer from St. Anthony's Hospital to University Care Center fell within this category of transfers, Alton Memorial cannot be held liable for what happened during the transfer unless Nancy establishes that the transfer involved willful and wanton conduct. *Id.*

¶ 27 Nancy made no response to Alton Memorial's second motion for summary judgment. She submitted no affidavits pursuant to Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) to support her claims in opposition and provided no material facts to support an allegation of willful and wanton misconduct. She also failed to submit a Rule 191(b) affidavit to request additional time to procure affidavits, or to conduct additional discovery. *Id.*

¶ 28 Regarding Nancy's argument that she needed additional time to obtain an expert, we note that in July 2022 after Alton Memorial filed its first motion for summary judgment, Nancy contended that she needed additional time to conduct expert discovery. The court agreed to Nancy's request but asked her to propose discovery deadlines, which she failed to do. She also failed to identify any expert witness, including any specific information about the substance of any proposed opinions during the year and a half before the trial court granted Alton Memorial's second summary judgment motion.

¶ 29 Nancy argues that at the summary judgment stage, when a plaintiff indicates that she needs to obtain expert testimony, the court must give her that opportunity. She blames her delay in

10

finding an expert on the "evasive" discovery process she endured with defendant, University Care Center. Nancy relies upon *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 690 (2000), where the appellate court found that the trial court's granting summary judgment was premature. We find *Williams* distinguishable. There, the complaint was filed in February 1998 and a summary judgment motion was filed by the defendant 13 months later. *Id.* At that time, the defendant had yet to make its nurses available for deposition. In September 1999 the defendant filed a substantially similar motion for summary judgment at which time the plaintiff had not finished deposing occurrence witnesses and/or commenced expert discovery. *Id.*

¶ 30    In July 2022 Nancy's attorney filed a Rule 191 affidavit alleging that "it appears that there are employees at University Care Center that have information that will establish additional facts to illuminate the culpable conduct of the ambulance crew that caused [the fall]." The affidavit also averred that Nancy's attorney "has consulted with knowledgeable experts in the field of patient transport and said witnesses have advised that there is no reasonable explanation for the conduct of crew transporting the decedent and the only reasonable explanation is a total abandonment of relevant standard of care training applicable to such circumstances." This affidavit was not compliant with Rule 191. A proper Rule 191(b) affidavit must; (1) name the person from whom the plaintiff needs to obtain discovery; (2) must show why the affidavits could not be obtained; and (3) must state what the party believes the sought-after witnesses would testify to if sworn, along with the reasons for these beliefs. Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2019). Nancy merely alleged that "it appears there are employees" at University Care Center with relevant knowledge. However, she failed to name these employees or provide any details about their relationships with the nursing home or their purported knowledge of the facts of this case. She provides no

explanation for an inability to obtain relevant affidavits and provides no information regarding what relevant knowledge or opinion those experts may possess.

¶ 31 "Failure to comply with Rule 191(b) defeats an objection on appeal that insufficient time for discovery was allowed." *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1064 (1992). This case was filed on September 4, 2019. Alton Memorial filed an initial motion for summary judgment on May 18, 2022. In July 2022, Nancy's attorney filed a noncompliant Rule 191(b) affidavit asking for additional time to conduct discovery. Alton Memorial's motion was called for hearing on September 9, 2022. While the trial court granted summary judgment for Alton Memorial on the negligence counts, the court denied summary judgment on the willful and wanton, stating: "Although the age of the case may warrant summary judgment in favor of *** Alton Memorial, *** [Nancy] has been unable to obtain discovery from *** [University Care Center], due to no fault of [Nancy]." On October 16, 2023, Alton Memorial renewed its motion for summary judgment on the issue of willful and wanton conduct.

¶ 32 The liability claim Nancy raised against Alton Memorial only involved the non-emergency transport of James to University Care Center. This was a two-man ambulance crew. Nancy has already deposed both members of that crew—Brooks and Bell. Based upon their deposition testimony, even construing it strictly against Alton Memorial and liberally in favor of Nancy, they both did everything possible to stop the gurney from falling. At best, construing the pleadings, affidavits, and depositions liberally in favor of Nancy, she can only establish the existence of a possible material issue of genuine fact regarding Brooks and Bells' negligence. However, there are no genuine issues of material fact in the record to support any argument that the actions, or inactions, of Brooks and Bell were willful or wanton.

12

¶ 33　Nancy argues that Alton Memorial was required to establish that the actions taken by its ambulance crew did not constitute willful and wanton conduct. She cites no authority for this argument. There is no legal foundation for Nancy's argument that it was Alton Memorial's burden to prove that its actions did not constitute willful and wanton misconduct. It was Nancy's burden to establish that the conduct of the Alton Memorial Hospital ambulance crew was willful and wanton. *Luss v. Village of Forest Park*, 377 Ill. App. 3d 318, 339 (2007).

¶ 34　Nancy's reliance on *Prowell*, 339 Ill. App. 3d 817 (2003) is unavailing. In *Prowell*, the injured party also fell from a gurney. *Id.* at 819. However, that ambulance crew failed to ensure that the gurney was locked and left the gurney and patient unattended. *Id.* at 823. The appellate court reversed a grant of summary judgment because the evidence established that the ambulance crew failed to secure the legs of the gurney and left the gurney and patient unattended. *Id.* at 824-26. While the gurney was unattended, it rolled into a pothole. *Id.* at 823. Here, the gurney was properly secured and the ambulance crew never left James or the gurney unattended.

¶ 35　　　　　　　　　　　　　III. CONCLUSION

¶ 36　We find that summary judgment was appropriate where the pleadings, depositions and any admissions and/or affidavits on file, when viewed in the light most favorable to Nancy, established that there was no genuine issue of material fact to support an allegation of willful and wanton misconduct on behalf of Alton Memorial's ambulance crew. Therefore, Alton Memorial Hospital was entitled to judgment as a matter of law. *Habdab, LLC v. County of Lake*, 2024 IL 130323, ¶ 18 (citing 735 ILCS 5/2-1005(c) (West 2022)).

¶ 37　For the above reasons, we affirm the judgment of the Madison County circuit court.


¶ 38　Affirmed.